[No. 1371.]

GEORGE S. SAWYER, Appellant, *v.* W. J. DOOLEY, Respondent.

Delinquent Taxes—Summary Process for Collection.—The summary process provided by statute for the sale of property for delinquent taxes amounting to less than three hundred dollars does not deprive a person of property without due process of law.

Idem—Due Process of Law—Classification of Taxpayers.—Such summary proceedings do not deprive a person owing less than three hundred dollars of the equal protection of the laws; although, where the amount is more than that sum, there must be a regular action in court for its collection. This is only a reasonable exercise by the legislature of the right to classify the taxpayers.

Constitutional Law—Specific Constitutional Restrictions.—A statute can only be declared unconstitutional where specific restrictions upon the power of the legislature can be pointed out, and the case shown to come within them, and not upon any general theory that the statute is unjust, or oppressive, or impolitic, or conflicts with a spirit supposed to pervade the constitution, but not expressed in words.

Constitutional Construction—Assessment and Equalization of Property.—There is nothing in the constitution of Nevada which indicates that it was intended to confer upon county assessors the sole right to assess property, or upon county commissioners the sole right to equalize its valuation.

Idem—Departments of State Government—Delegation of Powers.—Article III. of the constitution, dividing the state government into three great departments, does not prohibit one department from exercising powers of the nature of those belonging to one of the other departments, unless that power is either expressly or impliedly conferred upon the other department by the constitution. That article only refers to the state government as created by the constitution.

STATE BOARD OF ASSESSORS AND EQUALIZATION—DE FACTO MEMBER. COLLATERAL ATTACK.—The right of a *de facto* member of the board of assessors and equalization to exercise the duties of his office can not be collaterally questioned.

CONSTITUTIONAL CONSTRUCTION—ASSESSMENT OF PROPERTY.—As all property is to be assessed at its actual cash value, the fact that the act (Stat. 1891. p. 56) provides that different kinds of property shall be assessed by different assessors, does not make it conflict with article X of the constitution of Nevada, requiring a uniform and equal rate of taxation. The cash value may be as well and accurately determined by several men and boards as by one.

STATUTORY CONSTRUCTION—PROPERTY OF CORPORATIONS AND INDIVIDUALS.—As the act provides that all railroads, however owned, are to be assessed by the state board, and all other property by the county assessors, it is not in conflict with Sec. 2, Art. VIII of the constitution, requiring corporations to be taxed the same as individuals. It makes no improper discrimination between corporations and individuals.

DELEGATION OF POWERS OF GOVERNMENT—POSSIBLE ABUSE OF POWER.—In all systems of government power must be lodged somewhere, and the fact that the power given to the state board may be abused is not a sufficient argument against the authority of the legislature to place it there, nor against the right of the board to exercise it.

STATUTORY CONSTRUCTION—CONSTITUTIONAL LAW.—The act is simply an exercise of the right of the legislature to classify property for the purposes of taxation, and as in authorizing the board to assess property it applies to all railroads in the state, it is a general law, and not in conflict with Sec. 20 of Article IV, forbidding special laws for the assessment and collection of taxes.

AUTHORITY OF THE STATE BOARD OF ASSESSORS AND EQUALIZATION—EQUALIZATION OF PROPERTY.—The act authorizes the board to equalize the value of railroads, as well as other property, and to raise the assessed value of the same, without regard to whether the owner applies for a reduction of the valuation.

(Syllabus by BIGELOW, J.)

APPEAL from the District Court of the State of Nevada, Lincoln county.

*G. F. Talbot*, District Judge.

The facts fully appear in the following statement by the justice delivering the opinion.

Action brought to restrain defendant, as tax collector of Lincoln county, from selling certain property of the plaintiff for taxes delinquent for the year 1891, amounting to fifty dollars and five cents. The agreed facts are that the plaintiff was the

owner of certain property which was duly assessed by the assessor of that county for the year 1891. That the county board of equalization made no change in the valuation, but the state board of assessors and equalization raised it, in common with all other property in the county, ten per cent. The plaintiff duly tendered the amount of the tax due from him upon the original assessment, but the tender was refused.

At the commencement of the action the court granted a temporary restraining order, but upon the final hearing it was dissolved, and judgment rendered for the defendant for the sum of fifty-seven dollars and five cents, the amount of the tax and penalties, together with costs of suit. The plaintiff appeals.

The act of 1891 (Stat. 1891, p. 56) creates the state board of assessors and equalization, to consist of the governor, state controller, secretary of state, attorney general, and state treasurer.

This board is to assess all railroads, and the rolling stock and side tracks of all railroads in the state. The value of all side tracks is to be apportioned to the county where situated, and also a part of the total assessment of main track and rolling stock, in proportion to the number of miles of railroad in the county. All other railroad property, and all other property, is to be assessed by the several county assessors. The state board is to act as a board of equalization, and may increase or lower the entire assessment roll of any county, or any class of property or individual assessment contained therein.

Section 12 of the act reads : "If the owner of a railroad assessed by the state board be dissatisfied with the assessment made by the said board, such owner may * * * apply to to the board to have the same corrected in any particular, and the board may correct and increase or lower the assessment made by it, so as to equalize the same with the assessment of other property in the state. If the board shall increase or lower any assessment previously made by it," a statement of the change is to be made to the county auditor.

*George S. Sawyer, in pro. per.,* for Appellant.

I.   Section 39 *et seq.* of the revenue law is contrary to the constitution of this state and to that of the United States. It authorizes a person to be deprived of his property "without due process of law." (Amendment V, Const. of the United States:

Sec. 8, Art. 1, Const. of Nevada.)   The discriminating mode of procedure where delinquent taxes amount to more than three hundred dollars as compared with the mode where they amount to only that sum, or less, does not afford to owners of property "the equal protection of the laws."

II.   The statute creating and defining the powers of the state board of assessors and equalization is not warranted by our constitution and the principles of government.   It attempts to create offices and a board which is not authorized by the constitution, but is impliedly prohibited by it.   It delegates legislative powers to the board by giving it authority to prescribe rules and regulations to govern boards of county commissioners, contrary to Art. III of the constitution.   It violates the constitution in providing different modes of assessing different classes of property.   It violates Art. X of the constitution in giving the board arbitrary power to raise or lower the whole assessment roll of counties.   It violates the constitution in giving to the board judicial powers, while every member of the board belongs to the executive department of the state.

*J. D. Torreyson*, Attorney General, and *Trenmor Coffin*, for Respondent.

I.   Every act is presumed to be constitutional, and courts will not declare an act unconstitutional and void unless it clearly appears so after mature deliberation and earnest consideration.

II.   If the legislature had the power to create such a board, and if the law is uniform, then it is constitutional.

III.   The general power over the question of taxation is given by the constitution to the legislative department, and it has by implication the power to determine the value of the property to be assessed, and the power of discrimination in selecting the agents through which it may fix the taxable values of the state and can delegate this power to others.   (*Van De Griff* v. *Haynie*, 28 Ark. 270.)

IV.   The act is a general law and operates uniformly upon all property of like class or kind throughout the state.   Such classification is not prohibited by the federal constitution.   (*St. L. M. & S. Ry.* v. *Worthen*, 52 Ark. 529; *Railroad Tax Cases*, 92 U. S. 575; *Cummings* v. *Bank*, 101 U. S. 153; *Kentucky Ry. Cases*, 115 U. S. 321; *Ottawa Gas Co.* v. *Downey*, 127 Ill. 201; *People* v. *Henderson*, 12 Colo. 369.)

By the Court, BIGELOW, J. (after stating the facts as above):

1.   Where the amount of a delinquent tax is less than three hundred dollars, the statute (Stat. 1891, p. 147 *et seq.*) authorizes the county treasurer to sell the property upon which the tax is a lien by simply giving certain notices, instead of there being an action brought in a court, and judgment obtained, as must be done where the tax is more than that amount. It is first claimed that this law is unconstitutional, because it deprives a person of property without due process of law.   This point has, however, been too often decided adversely to the appellant to be now open to further controversy.   So far as we know, it has been uniformly held from the time when the objection was first made, upon grounds that seem entirely satisfactory, that the clause of the constitution under consideration does not prohibit the collection of taxes by summary process instead of by regular proceedings in court.   (*State* v. *Central Pac. R. Co.*, 21 Nev. 260; *Gibson* v. *Mason*, 5 Nev. 283; *Davidson* v. *New Orleans*, 96 U. S. 97; *Kelly* v. *Pittsburgh*, 104 U. S. 78; *High* v. *Shoemaker*, 22 Cal. : 63.)

2.   The appellant further claims that the provision of the statute for a summary collection of taxes denies to him an equal protection of the laws, and hence is in conflict with the fourteenth amendment of the constitution of the United States. This is based upon the fact already stated, that where the tax amounts to over three hundred dollars there must be a regular action in court for its collection.   He is, however, given the same protection that all other persons that owe less than three hundred dollars are given, and we think that this, instead of being an unlawful discrimination against the appellant, is simply the exercise of the right to make a classification of taxpayers, which, within reasonable limits, we believe the legislature has full power to adopt.   Good and sufficient reasons appear why, in cases where the tax is only for a small amount, neither the state nor the taxpayer should be burdened with the additional labor and expense of an action at law.   But as in these summary proceedings the statute must be more or less strictly complied with, they are often defective, and do not result in the collection of the delinquent tax; this being so, where the amount is large, the legislature has doubtless wisely provided that there shall be a regular action at law, as being more likely to result in compelling the payment of the tax.

This classification is governed by the same principle which, as we shall see, we think authorizes the legislature to provide different assessors and different methods of equalizing the valuation of different classes of property.

3.  State boards of assessment and equalization are so generally established throughout the various states of the union, and their validity has been so often passed upon and sustained by the highest courts in the land, that there is scarely a question presented in this appeal that has not been already presented and overruled in some other case.

Perhaps it would be a sufficient answer to the principal argument made by the appellant, to say that the courts cannot " declare a statute unconstitutional and void solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social or political rights of the citizen, unless it can be shown that such injustice is prohibited, or such rights granted or protected by the constitution." (Cooley, Const. Lim. 197.)

Nor can this be done because of the apparent injustice or impolicy of the law, nor because it is opposed to a spirit supposed to pervade the constitution, but not expressed in words, nor upon any loose and vague interpretation of the instrument. (Id. 202, 204.) The presumption is that an act of the legislature is valid, and it must be enforced unless restrictions upon the legislative authority can be pointed out in the constitution, and the case shown to come within them. (*State* v. *Humboldt Co.*, 21 Nev. 235) So; even if we agreed with the plaintiff concerning the oppressive character of this law (which we do not), we should be powerless to give him a remedy upon any such grounds.

4.  But coming to such specific objections to the law as we think it necessary to notice, we find nothing in the constitution which indicates to our minds that it was intended by that instrument to confer upon county assessors the sole power to assess property, nor upon county commissioners the sole right to equalize the valuation thereof.  Neither do we find any implied prohibitions in that instrument against the creation by the legislature of the board provided for in this act.  As at present advised, we are of the opinion that these matters are proper subjects for the regulation and control of the lawmaking body.

5. A number of the points made by the appellant are founded upon a misapprehension of the scope and meaning of article 3 of the constitution. That article divides the state government into three great departments, and directs that "no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted." As will be noticed, it is the state government as created by the constitution which is divided into departments. These departments are each charged by other parts of the constitution with certain duties and functions, and it is to these that the prohibition just quoted refers. For instance, the governor or the judiciary shall not be members of the legislature, nor shall they make the laws under which we must live. But this is quite a different thing from saying that no member of the executive or judicial departments shall exercise powers in their nature legislative, but which are not particularly charged by the constitution upon the legislative department; such as where the board of commissioners for the insane makes rules for the management of the asylum, or a court establishes rules for the transaction of the business coming before it. It would be impossible to administer the state government were the officers not permitted and required, in many instances, to discharge duties in their nature judicial, in that they must exercise judgment and discretion in determining the facts concerning which they are called upon to act, and in construing the laws applicable to them. Hence we see no constitutional objection to members of the executive branch being charged with the duty of assessing property, or of acting upon the board of equalization, for neither of these functions have been, either expressly or impliedly, placed by the constitution upon either of the other departments; for certainly, although in equalizing valuations a board may act in a judicial capacity, the constitution nowhere contemplates that the judicial department, as organized by article 6, shall discharge that duty. This construction is supported by two well-considered cases decided by the supreme court of California (*People* v. *Provines,* 34 Cal. 520; *Staude* v. *Commissioners,* 61 Id. 313), where the matter will be found elaborately discussed. (See also, Story, Const. Sec. 525, and *Mayor, etc.,* v. *State,* 15 Md. 376, 455.)

6. We need not inquire whether the governor can be constitutionally required to act as a member of the board. Among several reasons for this a sufficient one is that he is at least a *de facto* member, and his title to the office cannot be collaterally questioned. As to the public, his acts are valid. (Mecham, Pub. Off. Sec. 330; *Walcott* v. *Wells*, 21 Nev. 47.)

7. The act does not violate article 10 of the constitution, which requires a uniform and equal rate of assessment and tax-ation. All property, whether assessed by the board or by the county assessors, must be assessed at its actual cash value, and there is no reason why this value may not be as accurately determined by several different men and boards as by one. In fact, it might sometimes be done much better, as one man, although an expert upon the value of horses and farms, might know but little of railroads or other property. If not, this would be an equally good argument against the system of separate county assessors and boards, and require all the property in the state to be assessed and equalized by one man or one board. All that is required is a uniformity of taxes, and not a uniformity in the manner of assessing or collecting them. *(San Francisco & N. P. R. Co.* v. *Board of Equalization,* 60 Cal. 12, 30.)

8. Under the act the property of corporations is taxed the same as the property of individuals, so it is not in conflict with section 2 of article 8 of the constitution. The act provides that all railroads shall be assessed by the state board, and all other property by the county assessors, and this applies, of course, without regard to whether the railroad or other property is owned by corporations or individuals. The fact that railroads are generally owned by corporations cuts no figure in the argument, for they may be, and in one quite notable instance in this state have been, owned by individuals. All that this section of the constitution probably means is that the property of corporations shall be subject to the same taxation as the property of individuals, and no one can claim that this act either exempts them from their share of the public burdens or unfairly discriminates against them. They pay the same rate of taxation that individuals pay upon what is, theoretically at least, the same valuation—the cash value of their property. Perhaps if the act applied only to corporations, it might still be valid, but it is unnecessary to consider this.

9. This brings us to the further objection that the act places

arbitrary power in the hands of the board, and thus enables them to show favoritism. Any assessor or board of equalization may do this, and it is consequently no sufficient argument against the constitutionality of this law. There is no more probability that this board will do so than that it would be done by county boards of equalization. In all systems of government power must be lodged somewhere. Wherever it is placed it may be abused, and consequently this is no sufficient reason for denying its existence in a particular instance. Such · abuse, if sufficiently gross, might subject the offenders to removal from office, and they are answerable politically to their constituents.

10. It is next said that this is a special law for the assessment and collection of taxes, and consequently in conflict with section 20 of article 4 of the constitution, forbiding such legislation. This has been, perhaps, the most serious objection made to the validity of legislative acts creating state boards of assessors and equalization, but it has now been so often raised and overruled that there is but little more to be said about it. It is founded upon a misapprehension of what is meant by the term "special law," as used in the constitution. That is well defined by Mr. Justice Paxson in *Wheeler* v. *Philadelphia,* 77 Pa. St., 338, 348, where he said : " Without entering at large upon the discussion of what is here meant by a ' local or special law,' it is sufficient to say that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special and comes within the constitutional prohibition.      *      *      *      For the purpose of taxation real estate may be classified. Thus, timber lands, arable lands, mineral lands, urban and rural, may be divided into distinct classes and subject to different rates.     In like manner other subjects, trades, occupations and professions may be classified, and not only things, but persons, may be so divided."

The question of what constitutes a special law within the meaning of the constitution has often been before this court, and the principles laid down in the various decisions show clearly that this act is not open to that objection. It is general because it applies to all railroads within the state, which constitute a distinct class or species of property, concerning which it was proper to adopt a different plan of assessment from that

applicable to other kinds. (*Youngs* v. *Hall*, 9 Nev. 212, 218, 225; *State* v. *Irwin*, 5 Nev. 111, 120; *ex parte Spinney*, 10 Nev. 323; *State* v. *California M. Co.*, 15 Nev. 234, 248, 256; *State* v. *Boyd*, 19 Nev. 43.) Railroads now constitute a large and important part of the property of our state, entirely distinct from other kinds, and requiring many laws and regulations for their management and control, specially applicable to them. Good reasons for a change existed in the abuse of the former methods of assessment, whereby, although there was no possible difference of value, a road was sometimes assessed at twice the figure in one county that it was in an adjoining county. Such glaring injustice, either to the road or to the people, called for a remedy, and in providing for its assessment by the state board the legislature has simply applied the same principle of classification that it might apply to any other distinct species of property. To be sure, the same end might have been reached by simply creating a state board of equalization with power to raise or lower individual assessments, but it would have amounted to the same thing, and it was for the legislature to choose between the two systems, either of which would be equally valid and efficacious. So long as classification is not based upon an individious or unreasonable distinction with reference to the same kinds of property, the courts cannot interfere. (*People* v. *Henderson*, 12 Colo. 369.)

In *Kentucky Railroad Tax Cases*, 115 U. S. 321, where the validity of a quite similar law was under consideration, the court said: "But there is nothing in the constitution of Kentucky that requires taxes to be levied by a uniform method upon all descriptions of property. The whole matter is left to the discretion of the legislative power, and there is nothing to forbid the classification of property for purposes of taxation and the valuation of different classes by different methods The rule of equality, in respect to the subject, only requires the same means and methods to be applied impartially to all the constitutents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances. There is no objection therefore to the discrimination made as between railroad companies and other corporations in the methods and intrumentalities by which the value of their property is ascertained. The different nature and uses of their property justify the discrimination in this respect which the discretion of the leg-

islature has seen fit to impose.    *    *    *    The right to classify
railroad property, as a separate class, for purposes of taxation,
grows out of the inherent nature of the property, and the
discretion vested by the constitution of the state in the legis-
lature, and necessarily involves the right, on its part, to
devise and carry into effect a distinct scheme, with different
tribunals in the proceeding to value it." We deem this lan-
guage entirely in point in this case, although in some respects
there is a difference between the constitution of Kentucky and
our own. The following cases are also more or less applicable
and support our conclusions: *Franklin Co.* v. *Railroad Co.*,
12 Lea, 521, 534; *St. Louis, etc., Ry. Co.* v. *Worthen*, 52 Ark.
529, 535; State Railroad Tax Cases, 92 U. S. 575; *Cummings* v.
*Bank*, 101 U. S. 153; *Spaulding* v. *Hill*, 86 Ky. 656; *Dubuque* v.
*Railroad Co.*, 47 Iowa 196.

11.    It is also said that the act is special because it authorizes
the board to equalize the assessment of all other classes of
property except railroads, but denies that right as to them.
Perhaps this could be admitted and yet the constitutionality of
the act successfully maintained, but we deem it unnecessary to do
so. A careful examination of the law convinces us that it was
the intention of the legislature that the board should equalize
the valuation of railroads, as well as other property. The argu-
ment to the contrary is based upon the reading of section 12 of
the act, which, it is contended, only authorizes the board to
equalize railroad assessments where the owner is dissatisfied.
As, where the valuation is too low, he would not be likely to
apply for any change, this construction supports the contention.
The wording of the section gives some color to this view, but
taken altogether, we think it clear that such was not the inten-
tion of the act. Such a construction would be absurd, and
hence should, if possible, be avoided. The power to increase
the assessment is expressly given, but it is a lame and impo-
tent conclusion to suppose that this was intended only to
be done where the owner made complaint, which it is reason-
ably certain he never would do. Boards of equalization are
created to correct injustice and inequalities in the assessment of
property, and where they have jurisdiction of property, and in
some cases may lower the valuation thereon, it should require
very clear language to lead us to the conclusion that it was not
intended, no matter what mistake had been made, that they

should also increase it. The very fact of the creation of the board signifies something broader than this. There never was much reason for holding, even under the general revenue law, that there must be a complaint to authorize a board to review an assessment, but there is less under this act. The common-sense view of the matter seems to have been taken by the supreme court of Arkansas in *Pulaski County Board of Equalization Cases*, 49 Ark. 518, 527. We are of the opinion that the act of 1891, creating this board, is in all respects constitutional and valid.

But the only decree that should have been entered in the case was one of dismissal, and in favor of defendant for his costs of suit. Instead of that, judgment was rendered in his favor for the entire tax and penalties. For this error the judgment must be reversed, with instructions to the lower court to proceed in accordance with this opinion.