(25 App. Div. 164.)

### In re HENNEBERGER et al.

(Supreme Court, Appellate Division, Second Department.   January 18, 1898.)

CONSTITUTIONAL LAW—LOCAL ACT—IMPROVEMENT OF HIGHWAYS.

> Laws 1897, c. 286, provides that in any town having 8,000 or more inhabitants, and containing an incorporated village having a population of not less than 8,000 and not more than 15,000 inhabitants, except in the county of Madison, any 5 or more persons owning lands adjoining or abutting on any highway extending within such town and without such incorporated village for a distance of at least 2½ miles may present to the supreme court, at a special term held in the county, a petition for the appointment of commissioners to widen and improve such highway, or a portion thereof not less than 2½ miles in length; such portion being wholly without the limits of such incorporated village. *Held* a local act, and so repugnant to article 3, § 18, of the constitution; for, in setting forth the towns to which it shall apply, it exceeds the limits of permissible classification, and constitutes a mere designation.
>
> Bartlett, J., dissenting.

Appeal from special term.

In the matter of the application of Herman Henneberger and others for the appointment of commissioners to widen a portion of a certain highway in the town of New Rochelle. From an order appointing commissioners, certain abutting owners appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Charles H. Young, for appellants.
Isaac N. Mills, for respondents.

WOODWARD, J.   The grounds of this appeal are that the statute is in violation of the provisions of section 18, art. 3, of the constitution, which provides that the legislature shall not pass a private or local bill in any case for the "laying out, opening, altering, working, or discontinuing roads, highways or alleys, or draining swamps or other low lands."   There are other points raised, but this seems to be the material question; and it is conceded on the part of the respondents that, if this statute is a local measure, it is repugnant to the provisions of article 3, § 18, and therefore of no force and effect.   Without going into the history of the act, further than it may be gathered from the records, it appears that chapter 286 of the Laws of 1897 was passed on the 16th day of April, 1897, and was entitled:

"An act to provide for the widening and improving of highways in towns having a total population of eight thousand or more inhabitants, and containing an incorporated village having a total population of not less than eight thousand and not more than fifteen thousand inhabitants."

The act provides for two weeks' published notice of intention to apply for the appointment of the commissioners provided for; and on the 22d day of May, a little over one month from the final passage of the bill, and almost before it was printed and generally distributed, we find these petitioners from the town of New Rochelle in court, all the conditions complied with, asking for the appointment of the three commissioners.   The assumption is not unfair, then, that the act was passed at the request of these petitioners, and that it was designed for the special purpose of allowing them to do the things which they have done, and which they expect to do, in reference to a certain highway in the town of New Rochelle.   This does not, in itself, fix the character of chapter 286 of the Laws of 1897, but it points strongly to the conclusion that the act was passed for the purpose of accomplishing a purely local purpose; and if the language of the act is such that it cannot be applied to conditions which may reasonably be supposed to exist throughout the state; if the specifications are such that they cannot be applied to the general highway system of the state,—then it is a local law, within the meaning of the constitutional inhibition, and cannot be sustained.   There is no doubt of the right of the legislature to limit the operation of statutes, by classification, to communities of a certain number of inhabitants, even though there should be only one such place within the state, for all have the possibility of reaching the number designated; but when the legislature goes beyond this, describing a local condition so accurately that it would be beyond a reasonable probability that it would become generally operative, it exceeds the authority delegated by the people, and its enactment becomes a nullity.   "It is not always

easy," says Judge Earl in delivering the opinion of the court in the case of People v. Newburgh & Shawangunk Plank-Road Co., 86 N. Y. 7, "to determine what is a local act, within the meaning of the constitutional provisions referred to. Acts have been passed nearly if not quite every year since the constitution of 1846, from the operation of which particular counties have been excepted; yet it has never been decided, or, so far as I can discover, before claimed, that such acts were local. A local act is one operating only within a limited territory, or specified locality. It could not be said with propriety that a territory comprising nearly the whole state was merely a place or locality. An act operating upon persons or property in a single city or county, or in two or three counties, would be local. But how far must its operation be extended before it ceases to be local? To determine this, no definite rule can be laid down, but each case must be determined upon its own circumstances." If, then, a statute in general language is so drawn that it is out of the range of reasonable probability that it can be made to operate upon persons or property outside of a single locality, or, at most, in a very small number of localities, within the state, it is a local law, and no amount of ingenuity in its drafting can be allowed to defeat the objects of the constitution. The statute under consideration, aside from its title, already set forth, provides that:

"In any town having a total population of eight thousand or more inhabitants and containing an incorporated village having a total population of not less than eight thousand and not more than fifteen thousand inhabitants, except in the county of Madison, any five or more persons owning lands adjoining or abutting on any highway which extends within the limits of such town and without the limits of such incorporated village for a distance of at least two and one-half miles, may present to the supreme court, at a special term thereof to be held in the county containing said town, a petition for the appointment of three commissioners for the purpose of widening and improving such highway or a certain specified portion thereof, not less than two miles and a half in length, such portion being wholly without the limits of such incorporated village."

The act further provides for issuing the bonds of the town, and the assessment of a portion of the cost upon the property benefited, the remainder to be met by taxation.

To come within the provisions of this statute, the petitioners must not only own land in a "town having a total population of eight thousand or more inhabitants and containing an incorporated village having a total population of not less than eight thousand and not more than fifteen thousand inhabitants," but they must own this land "adjoining or abutting" on a highway "which extends within the limits of such town and without the limits of such incorporated village for a distance of at least two miles and a half," and the portion to be improved must be "wholly without the limits of such incorporated village." In other words, any highway of less than 2½ miles in length between the boundaries of an incorporated village containing at least 8,000 inhabitants, in a township of at least 8,000 inhabitants, and the boundaries of such township would not be improved, under the operation of this statute. The whole

operation of the statute is thus confined to the few townships in which there is a highway 2½ miles long outside of the limits of an incorporated village of at least 8,000 inhabitants, and in any event it cannot extend beyond the limits of the town in which it is put in operation; thus confining its operation to a very limited number of specified localities, and coming within the definition of Judge Earl, that a "local act is one operating only within a limited territory, or specified locality." It is not material that the act is drawn in general terms, or that the "specified locality" is not called by name. It may be specified with none the less of certainty by describing a condition which can nowhere else be found, and which is clearly intended to confine its operation to a particular locality. In commenting upon a similar case, arising under a like provision in the constitution of Pennsylvania, where the legislature had enacted a statute in which it was provided that in a county "in which there shall be any city incorporated at the time of the passage of this act with a population exceeding eight thousand inhabitants, situate at a distance from the county seat of more than twenty seven miles by the usually traveled public road," the court, speaking through Justice Paxson (Com. v. Patton, 88 Pa. St. 258), says:

"This is classification run mad. Why not say all counties named Crawford, with a population exceeding sixty thousand, that contain a city called Titusville, with a population over eight thousand, and situate twenty-seven miles from the county seat? Or, all counties with a population of over sixty thousand, watered by a certain river, or bounded by a certain mountain? There can be no proper classification of cities or counties, except by population. The moment we enter geographical distinctions, we enter the domain of special legislation, for the reason that such classification operates upon certain cities or counties, to the perpetual exclusion of all others."

Chapter 286 of the Laws of 1897 is not local because it excepts from its operation the county of Madison, provided the act is uniform and general in its operation upon persons and property in the state in the localities to which it is supposed to apply. Ferguson v. Ross, 126 N. Y. 464, 27 N. E. 954. And the only importance to be attached to this exception is the evidence it bears upon the intent of the legislature to limit its operation to Westchester county and the town of New Rochelle. Madison county contains one of the very few incorporated villages at least closely approximating 8,000 in population, and is, perhaps, outside of the county of Westchester, the only county in the state to which this statute could be made to apply; and it is apparent that this, rather than any consideration of public policy, was the motive for the exception. It was necessary, to secure the approval of the legislature, to so frame the act, and to so limit the field of its operation, that it would encounter no opposition from local representatives, because, from its very nature, it was such an act that it was not applicable to the general highway system of the state, and could not be passed if it was understood to affect local constituencies generally. The important and determining fact is that the statute has upon its face the evidence of its local character, and the intent to accomplish indirectly what cannot be done directly. This provision of the constitution was adopted upon mature consideration in 1874 for the

purpose of correcting abuses which had grown up in the legislation of this state in respect to highways, and, after much discussion, was re-enacted in 1894; and it is the duty of the courts to seek, not to defeat, but to give effect to, all of the provisions of the fundamental law of the state. If the constitution is wrong, it should be amended by the people, not emasculated by the courts; and where there is a manifest effort, as in the present case, to secure local legislation in the guise of a general law, it is manifestly the province of this court to interpose, and to prevent the working of the wrong. This act is an effort to evade the constitution; to nullify the agreement on the part of the people, each with the other, that local legislation in reference to highways shall not be enacted,—and it cannot, therefore, receive the sanction of this court.

The order appealed from is therefore reversed, and the order appointing commissioners is vacated, with costs.

All concur, except BARTLETT, J., dissenting.

CULLEN, J. I concur in the opinion of Mr. Justice WOODWARD. But with the fear of In re Church, 92 N. Y. 1, before me, I suggest that the present case may be distinguished from the one cited. It is beyond dispute that in this character of statutes there must come a point when an enumeration of the various limitations of the application of the statute ceases to constitute classification, and becomes mere identification; for almost any object, whether it be a political division of the state, a geographical section of its territory, or even an individual citizen, can be identified by certain qualities that neither it nor he possesses in common with others of a class, as well as by name. Where the special attributes prescribed by the statute as exclusive conditions for the application of the statute can afford no fair or reasonable grounds for limiting the statute to one class, and excluding its application to others outside of that class, I think it should be held that such limitations constitute mere identification, and make the statute local, within the inhibition of the constitution. This act applies only to towns containing an incorporated village with a population of not less than 8,000 nor more than 15,000. The improvement which the statute authorizes to be made is, by its terms, to be wholly without the incorporated village, and in it neither the village nor its inhabitants are interested. What possible object can this provision, that the town must contain the incorporated village, serve, except to identify some particular town? By reference to the legislative manual of 1896, which gives the population of the various villages of the state according to the census of 1890 (the manual of 1897 appears to give simply estimated figures), I find 10 villages in this state with a population between 8,000 and 15,000,—Cortland, Edgewater, Flushing, Glens Falls, Lansingburg, New Rochelle, Peekskill, Port Jervis, Saratoga Springs, and Sing Sing. The village of Edgewater comprises parts of the territory of two towns. Flushing has been incorporated into the city of New York. Lansingburg is almost co-extensive with the town of the same

name, so it is impossible that there should be within the town a highway $2\frac{1}{2}$ miles in length outside of the village. This reduces the number of villages to which this statute can apply to seven, of which three (Peekskill, New Rochelle, and Sing Sing) are within the county of Westchester. I have little doubt that a sufficient knowledge of the geography of these villages (which I do not possess) would enable one to very much narrow this enumeration; nor can there be much doubt that the statute intended to apply to the village of New Rochelle alone. But the application of the statute is still further limited by the requirement that the highway to be improved shall be two miles and a half in length beyond the limits of the incorporated village. Thus, not only the particular town, but even the particular highway, is sought to be identified. If this statute is to be sustained, it can be improved upon. The next statute, instead of providing for towns containing villages with from 8,000 to 15,000 inhabitants, may prescribe that it shall apply only where the village has a population of not less than 11,000 nor more than 12,000, thus identifying Saratoga Springs, or of not less than 9,000 nor more than 10,000, thus identifying Port Jervis, in the town of Deer Park; and it may provide that the highway to be improved shall be not less than two miles and a half and not more than two miles and three-quarters in length. There must come a point when such legislation contravenes the constitution, and in my opinion the act under review has passed that point.

But, if the statute is to be held a general one, then, in my judgment, it is obnoxious to the provision of the constitution that requires that all city, town, or village officers shall be elected by the electors of such cities, towns, and villages, or appointed by such authority thereof as the legislature shall designate. Article 10, § 2. Probably the laying out, widening, and improvement of public highways is an administrative act of government, rather than judicial. (I use the term "judicial" in the narrow sense, as pertaining to the functions of the courts.) In this state, however, from the earliest times such questions have been determined by commissioners appointed by the county courts, or by their predecessors, the common pleas, subject to review by the courts appointing them, and in certain cases by the supreme court on appeal. This practice has been so long continued that I concede it is within the power of the legislature, at its option, to give the determination of such public improvements a judicial or an administrative aspect. In the present case, however, the determination of the commissioners appointed by the court seems final, and no power of review is given to the court. I think, therefore, that the commissioners are no more than administrative officers appointed by the court, instead of the local authorities of the town. But, be this as it may, it is certain that the physical construction and improvement of highways is a work that has always been discharged by the town officers. By the present statute the power and duty of the town officers in these respects are taken away, and vested in commissioners who are neither elected by the electors of the town, nor appointed by its officers. The commissioners award the contract for the work, supervise its performance, and avoid it if broken. The

only power of the supervisor of the town is to sign such contract as he may be directed by the commissioners. The town may be compelled to issue bonds to the amount of $75,000, if necessary, to pay for the improvement, in the management or direction of which neither its inhabitants nor officers have any voice. If the statute is general, then it may be that in the great majority of the towns of this state (for we are precluded from looking at the census to contradict this assertion), in the case of all highways 2½ miles in length (and we are equally precluded from saying a majority of the highways are not greater than that in extent), the duties and powers discharged by certain classes of town officers, from the earliest period of our state government, have been taken away from them, and vested in commissioners who derive their appointments from the courts; and the towns may be subjected to the pressure of great debts, in the creation of which neither their officers nor electors have taken any part. In Astor v. Mayor, etc., 62 N. Y. 567, it was held that the authority given the Central Park commissioners to grade certain streets in the city of New York, adjacent to or connecting with the park, was constitutional. As I understand the opinion, there was involved only the right to exercise power as to a particular improvement,—an improvement which at the time the legislature could itself have directed to be made. This power still resides in the legislature, so far as city streets are concerned, but no longer exists as to country highways. But in the opinion there is to be found no support for the proposition that the legislature could transfer from municipal authorities their general powers over the streets, to officials neither elected, nor appointed by the local officers. It seems to me that this statute must fall under the condemnation of one or other of the two sections of the constitution. If it is a local act, it is bad because the legislature cannot pass such acts with regard to highways; if general, it is bad because it deprives the town authorities of the control of their highways.

WILLARD BARTLETT, J. I feel constrained to dissent, on the authority of In re Church, 92 N. Y. 1. Otherwise I should concur in the opinion of Mr. Justice WOODWARD.