### CENTRAL PAC. RY. CO. v. EVANS et al.

#### (Circuit Court, D. Nevada. August 12, 1901.)

#### No. 712.

1. EQUITY JURISDICTION—ENJOINING ILLEGAL ASSESSMENT—ADEQUATE REMEDY AT LAW.

   A court of equity has jurisdiction of a suit to enjoin the assessment of complainant's property for taxation in a manner not authorized by the laws of the state, such remedy being the only one which affords adequate and appropriate relief by requiring the assessment to be made in a lawful manner.

2. TAXATION—LEGALITY OF ASSESSMENT—POWERS OF SPECIAL TRIBUNAL.

   Const. Nev. art. 10, § 1, requires the legislature to provide by law "for a uniform and equal rate of assessment and taxation," and the statute enacted in pursuance of such requirement (Cutting's Comp. Laws, § 1084) provides that each county assessor shall ascertain by diligent inquiry and examination all property in his county, real and personal, subject to taxation, and shall "determine the true cash value of all such property." By Act March 16, 1901, it was provided that the county assessors of the state shall meet at the capital each year, "and shall at such meetings establish throughout the state a uniform valuation of all classes of property which, by their character, will admit of such uniform valuation." Such act requires each county assessor to fix the valuation of property assessed by him at the valuation "placed on the same class of property" at the annual meeting, and imposes a penalty for a violation of such requirement, but provides that property not designated at the annual meeting shall be valued under the existing provisions of law. *Held*, that the board of assessors so created was a special tribunal, whose powers were strictly limited to those expressly conferred by the act, which were to fix the valuation of property by classification upon some reasonable basis, where it admitted of such classification; that such board had no power, without making a classification of railroad property, to designate a railroad company by name, and by a vote of its members fix the valuation per mile of its railroad throughout the state; and that its action in so doing was void, and did not affect the right and duty of each county assessor to determine for himself the "true cash value" of the property of such railroad company within his county.

In Equity. Suit for injunction.

W. F. Herrin, John Garber, and M. A. Murphy, for complainant.

William Woodburn, Atty. Gen., James R. Judge, Alfred Chartz, and Trenmor Coffin, for defendants.

A. E. Cheney, for defendants Alphonso A. Evans and Joseph W. Guthrie.

HAWLEY, District Judge. This is a suit in equity, brought by complainant, who is the owner of a franchise for a railroad, granted by the laws of the United States, extending from the city of Oakland, in the state of California, to the city of Ogden, in the state of Utah, known as and called the Central Pacific Railroad, which extends across the state of Nevada, and through the counties of Washoe, Lyon, Churchill, Humboldt, Lander, Eureka, and Elko, and is not situate in any other county in this state, against all the county assessors in this state, to enjoin and restrain the assessors of the particular counties through which the Central Pacific Railroad is built "from adopting, or being controlled in their action by, the said valuation of said meeting of assessors, in valuing and·assessing said Central Pacific Railroad in their respective counties, and from proceeding to value and assess such portion thereof as lies in the county of each, respectively, otherwise than in the exercise of his own official judgment and discretion, and according to the said laws of the state of Nevada for the assessment of railroads." Upon the filing of the bill an order was made requiring the defendants to show cause, if any they had, why the relief asked for should not be granted, and in the meantime a restraining order was issued. The rule to show cause was heard·upon the complaint and answer, and upon various affidavits and documents presented by the respective parties. The real object of the suit is to test the validity of the law entitled "An act to provide for a more uniform valuation and assessment of property in this state," approved March 16, 1901 (St. 1901, p. 61), and the validity of the proceedings had thereunder by the state board of assessors at its meeting held in Carson City, Nev., from April 1 to 4, 1901, inclusive. These are the main questions involved herein, but, as incidental thereto, it is alleged in the bill of complaint:

"That the valuation so assumed to be fixed by the said majority of said assessors upon said Central Pacific Railroad was and is arbitrary, unjust, oppressive, and greatly dispressionate to the fair value thereof, and to the value fixed by said board of assessors upon other similar property, and to the systematic valuation of other real property in said state, which is systematically undervalued by the assessors defendants herein throughout said state of Nevada, and is valued by them at not more than one-half of the market value thereof; that the fair value of said Central Pacific Railroad in the state of Nevada for the purposes of assessment and taxation does not exceed an amount greater than from $8,000 to $12,000 per mile of said Central Pacific Railroad, in different parts of said state, in respect of its main road, and an amount not greater than $3,500 per mile in respect of its side tracks in said state; * * * ·that the said valuation of said Central Pacific Railroad by said board of assessors at their said meeting held under said statute constituted, on the part of the majority of said board, a denial to this complainant of the equal protection of the law, and that such denial is in contravention of the 14th amendment to the constitution of the United States."

The affidavits and documents introduced upon this hearing principally relate to the value of the road. The answer was filed on behalf of each and all of the defendants, but at the hearing the defendant Evans, the assessor of Washoe county, and the defendant Guthrie, the assessor of Humboldt county, appeared separately, and took issue as to the value placed upon the railroad by the state board of assessors. Defendants claim that they are entitled to have the re-

straining order dissolved upon the principles announced by the supreme court of this state in Wells, Fargo & Co. v. Dayton, 11 Nev. 161. In that case it was held that the complainant was not entitled to an injunction, because it had a plain, speedy, and adequate remedy at law. It was stated by counsel for defendants that the case is identical with the one under consideration. That case was brought to enjoin the collection of a tax upon personal property. It was averred, among other things, in the complaint, that the defendant, who was the county assessor, "threatens to sell, and, unless restrained and enjoined, will sell, the office fixtures of complainant for the taxes assessed and levied by him to complainant; * * * that complainant has no speedy or adequate remedy at law; that, should defendant sell said fixtures, complainant will be greatly and irreparably damaged and injured; and that said defendant is wholly unable to respond in damages." It appeared in that case that the assessor, in assessing and attempting to enforce the payment of the taxes, was pursuing the identical course indicated by the statutes of this state, and all his acts were within the line of his official duties as prescribed by law. Upon those facts the chief justice, speaking for the court, said:

"There must, in every case, be some special circumstances attending a threatened injury of this kind, which distinguishes it from a common trespass, and brings the case under some recognized head of equity jurisdiction, before the extraordinary and preventive remedy of injunction can be invoked. The necessity of strictly adhering to this rule is obvious. The legislature is invested with the sole power of providing the modes by which state and county taxes shall be levied, assessed, and collected, and it is essential that the modes prescribed, if within constitutional limits, should be faithfully carried out by the officers to whom is intrusted the duty of their enforcement. The state and county government are dependent for their support upon the taxes imposed upon the property of their citizens, and experience and observation teaches us that the payment of taxes has very often to be enforced by summary and stringent means against the adverse sentiment and persistent resistance of the taxpayer. * * * With such collections courts of equity ought never to interfere, unless the bill clearly shows that complainant is likely to suffer some great or irreparable injury from the acts of the officer, and further shows that he has no plain, speedy, or adequate remedy at law."

See, also, Dows v. City of Chicago, 11 Wall. 108, 20 L. Ed. 65; Pittsburgh, C., C. & St. L. Ry. Co. v. Board of Public Works of West Virginia, 172 U. S. 32, 37, 19 Sup. Ct. 90, 43 L. Ed. 354, and authorities there cited.

The present suit is not brought to enjoin the collection of a tax. It is not brought to enjoin or restrain defendants, or either of them, from assessing the property of the complainant under the laws of this state; but is brought to compel the defendants to proceed according to law in making the assessments, the contention of the complainant being that by the law of the state of Nevada, regulating the assessment of railroads in said state, it is made the official duty of each of said assessors that he shall value and assess that portion of the Central Pacific Railroad which lies in the county of which he is the assessor according to his official judgment, and that in ascertaining, assessing, and fixing the value of said portion of the railroad for taxation he shall assess it the same as other property, and

shall 'consider, treat, and assess such portion thereof at its value within his county as an integral part of a complete, continuous, and operated line of railroad, and not as so much land covered by the right of way merely, nor as so many miles of track consisting of iron rails, ties, and couplings, as prescribed by section 1238, Cutting's Comp. Laws. The injunction is asked for to prevent any assessor from assessing the property in any other manner. If the contention of complainant as to the law is correct, irreparable injury might follow, not only to the complainant, but also to the state and counties which are entitled to the tax to be collected from the complainant by a legal assessment of its property. If the contemplated and threatened assessment by the various county assessors is, as claimed by complainant, without authority of law, it would necessarily follow that complainant has no plain, speedy, or adequate remedy at law; and in this respect the case in hand stands entirely upon a different footing from the facts presented in the case of Wells, Fargo & Co. v. Dayton. Where there is an unlawful departure from the provisions of the law relating to assessment, or any violation of the fundamental law, it is the duty of the court to enjoin the proposed invalid assessment. Railroad & Telephone Cos. v. Board of Equalizers of Tennessee (C. C.) 85 Fed. 302, 308; Crim v. Town of Philippi, 38 W. Va. 122, 18 S. E. 466. In Cooley, Tax'n, 760, the author says:

"There are certain cases with which the courts of law cannot adequately deal. Their preventive remedies are few, and of narrow scope; and where the case is such that, if threatened action is allowed to be taken, the mischief will be irremediable, equity, under old and well-established principles, will interfere, because equity alone can do complete justice under such circumstances. * * * The available remedy in equity, when any is admissible, is commonly that by injunction."

This principle was recognized and clearly stated in Wells, Fargo & Co. v. Dayton, supra. See, also, City of Ogden City v. Armstrong, 168 U. S. 224, 237, 18 Sup. Ct. 98, 42 L. Ed. 444; Wilson v. Lambert, 168 U. S. 611, 18 Sup. Ct. 217, 42 L. Ed. 599.

It is contended by complainant that the act of the legislature is invalid for many reasons: (1) That the act embraces more than one subject, and that but one subject is embraced in the title, contrary to and in violation of section 17, art. 4, of the constitution; (2) that it is a local or special law "for the assessment and collection of taxes" for state and county purposes, and violates section 20, art. 4, of the constitution; (3) that it discriminates against the complainant, and deprives it of its right, under the existing laws of the state of Nevada, to have its property equalized before the county commissioners of each county sitting as a board of equalization; (4) that it improperly delegates to the annual meeting of the various county assessors the power of the state of Nevada to classify property for the purpose of taxation, and improperly authorizes said assessors to establish a law throughout the state of Nevada; (5) that the proceedings had by the state board of assessors, in so far as they relate to the valuation of the Central Pacific Railroad, are absolutely null and void for want of jurisdiction, power, or authority. Can these contentions, or either of them, be sustained? Article 10, § 1, of the constitution of the state of Nevada, provides that "the legislature shall provide by law

for a uniform and equal rate of assessment and taxation." The leg-
islature, in pursuance of this provision, passed a law requiring the
county assessor to ascertain by diligent inquiry and examination all
property in his county, real or personal, subject to taxation, and to
"determine the true cash value of all such property." Cutting's
Comp. Laws, § 1084. The statute of March 16, 1901, provides,
among other things: .

"Section 1. The county assessors of the several counties of this state shall
meet for a period not exceeding ten days, in the office of the governor, at
Carson City, Nevada, on the first Monday of April in the year A. D. 1901,
and on the second Monday in January of each and every succeeding year,
and shall, at such meetings, establish throughout the state a uniform
valuation of all classes of property which, by their character, will admit
of such uniform valuation: provided, that in fixing such valuation the loca-
tion and situation of such property shall be considered: and provided fur-
ther, that nothing herein shall be so construed as to impair the right of the
board of equalization of any county to equalize taxes on all property, the
valuation of which has not been fixed at the annual meeting of county as-
sessors as provided in this section: provided, any taxpayer under the provi-
sions of this act shall not be deprived of any remedy or redress in a court
of law relating to the payment of taxes."

"Sec. 5. The valuation fixed at such annual meetings shall be uniform on
all such property as may be designated, except in cases where the valuation
is affected by its locality; and the assessors of the several counties of the
state shall fix values on all property not so designated at said meeting, in
the manner now provided by law."

"Sec. 11. It shall be the duty of each county assessor to fix the valuation
of property which may be assessed by him at the valuation placed on the
same class of property at the regular annual meeting of assessors for the
state."

"Sec. 13. Should any assessor in the state neglect or refuse to assess prop-
erty in accordance with the provisions of this act, or laws now in force and
effect, or place a less valuation on any property than has been fixed at said
meeting of assessors, the governor, state controller or attorney general shall,
upon due notification, instruct the district attorney of said assessor's county
to bring suit against such assessor and his bondsmen for the full amount of
taxes liable to be lost to the state and county by reason of such failure or
neglect to properly assess such property.⁵ The suit shall be tried in the
district court having jurisdiction in the county where the property is situ-
ated."

"Sec. 18. All acts and parts of acts. in so far as they conflict with the
provisions of this act, are hereby repealed."

⁵ The various objections urged against this act present several ques-
tions of grave importance. The provisions of the act constitute a
departure from the usual modes of assessment of property hitherto
existing in this state. It will be noticed that section 1 provides that
nothing contained in the act "shall be so construed as to impair the
right of the board of equalization of any county to equalize taxes on
all property, the valuation of which has not been fixed at the annual
meeting of county assessors as provided in this section"; thus dis-
criminating, in this respect, against the rights of the owners of prop-
erty the assessment of which is fixed by the board of assessors. It
is a mooted question, upon which there is ample room for a wide
difference of opinion, as to whether or not it will accomplish the ben-
eficial purposes expressed in the title "for a more uniform valuation
and assessment of property in this state." It does not require a val-
uation of all property under its provisions, or of any particular

species of property, but leaves this matter to the discretion of the state board of assessors. The provisions of section 1 recognize the fact that there is property within this state which cannot be designated into "classes of property," and hence cannot be valued by the state board. Who is to determine this matter? Is it not left to the board, at its option, to decide this question? It may divide one or more species of property into "classes of property," and be of opinion that the other property will not admit of a uniform value if divided into classes. Its power in this respect is unlimited. The act contemplates that the board may do this, and in section 5 provides that "the assessors of the several counties of the state shall fix values on all property not so designated at said meeting, in the manner now provided by law." It will thus be seen that the present act, instead of closing the gates against injustice, leaves the door wide open for all sorts of discrimination. The present act is, perhaps, as open to criticism as were the defects in the former law, which it is claimed this act was intended to avoid. But with these matters courts have nothing to do. It is simply the question of power that we are called upon to discuss and determine. Whether the power of the legislature was reasonably or unreasonably exercised; whether it was wise or unwise, expedient or inexpedient, to enact the law,—are questions left exclusively to the legislative department of the state government to decide, and their judgment must necessarily be decisive upon these questions. Ex parte Spinney, 10 Nev. 323, 337; Mining Co. v. Seawell, 11 Nev. 394, 400. As was said by Beatty, J., in Ex parte Spinney, supra:

"To superintend the conscience and intelligence of legislators, and see that they pay a due regard to considerations of justice and expediency in the enactment of laws, is the business of the people. The sooner this truth is recognized the better."

It will be assumed, for the purposes of this opinion, without deciding it, that the act is constitutional. And it will be admitted, for the purposes of this discussion, that the legislature has the unquestioned power, within constitutional limits, to prescribe different means and methods of assessment and of ascertaining values of railroad property for the purposes of taxation from the means and methods applied to other property. State v. Railroad Co., 21 Nev. 260, 264, 30 Pac. 689, and authorities there cited. It was so expressly held in Sawyer v. Dooley, 21 Nev. 390, 32 Pac. 437. The different nature and uses of this character of property may sanction and justify such a discrimination in this respect. Of course, the means and methods must be applied impartially to all, so that the law shall operate equally and uniformly upon all persons and property under similar circumstances. And it is also proper to state that the national courts have uniformly been disposed to sustain the legislative acts concerning the means and manner of assessment and taxation, which is so essential to the existence of the government; and it is only in cases where the law enacted by the legislature violates the plain provisions of the constitution that such acts are set aside. Within these limits, as before stated, the legislative power is supreme. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 669; Kentucky Railroad Tax Cases, 115

U. S. 321, 337, 29 L. Ed. 414; Railroad Co. v. Backus, 154 U. S. 421, 425, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Adams Exp. Co. v. Ohio State Auditors, 165 U. S. 194, 228, 17 Sup. Ct. 305, 41 L. Ed. 683; Magoun v. Bank, 170 U. S. 283, 293, 18 Sup. Ct. 594, 42 L. Ed. 1037.

The most serious question involved in this case is that heretofore specified as point 5 in the contention of complainant's counsel, and relates solely to the power given by the act to the state board of assessors: Did this board act beyond its jurisdiction? Pursuant to the provisions of this statute, the assessors met and organized, and remained in session four days. During the session they took up "the question of the valuation of the Central Pacific Railroad," which was stated by the chairman of the meeting to be the "valuation upon the main track, exclusive of everything else"; and the valuation was fixed, by a vote of nine to five, at $20,000 per mile. The side tracks of the Central Pacific were fixed at $7,000 per mile throughout the state. On motion, "the assessment of the rolling stock" was left to the individual judgment of the assessors. It will be observed by a careful reading of the minutes of the state board of assessors that there were no "classes of property" named by the board, so far as railroads were concerned. It is true that the state controller, in addressing the board, said: "The various railroads doing business in this state can be very easily classified. * * * While you are the sole judges of the methods by which you classify them, with your permission I will venture to suggest a classification." The classification suggested fell far short of what the act requires, but even this classification was not adopted in terms, and the board valued the railroads by names, without any attempt to make "classes of property." The power given to the board by the statute in this respect is limited to the fixing of values on "classes of property." No power is given by any of the provisions of the statute which authorized the board to fix values upon the property of any individual taxpayer. The act says that the county assessors shall "establish throughout the state a uniform value of all classes of property which, by their character, will admit of such uniform valuation." This is clear, plain, unequivocal, direct, and positive. In order to distribute property into classes, it was essential to arrange or classify the same according to some common properties, characters, or values pertaining to the classes designated. No power is given by the act to the board to fix a value on all cattle, horses, or sheep in the state at so much per head, or all lands in the state at so much per acre, or all railroads at so much per mile, without reference to the character or value based upon a sensible basis. The means prescribed by the act must be followed by the board. No departure therefrom is permissible. "Classes of property" had to be made by the board with reference to the values of the property in the particular class. It must be presumed that the object and intent of the act was to secure, as near as may be, a uniform valuation. It was not intended to compel the board to adopt an ironclad rule of absolutely equal valuation. That is impracticable and impossible. But, in order to accomplish the duty delegated to the assessors by the act, they were required to use their best judgment in that direction, and could not arbitrarily act

otherwise. In State v. Fogus, 19 Nev. 247, 249, 9 Pac. 123, 124, speaking for the court, I said:

"Taxation is a tribute for the support of the government, imposed on property in return for the protection and advantages which the government affords to the owner. It is an essential and fundamental requisite in the exercise of the power of taxation that the burden should be imposed or apportioned, with all practicable equality and justice, upon a uniform rule."

The designation of "classes of property" for the purposes of taxation based on values bears close analogy to the classification of counties and cities based on population for the purpose of making improvements, regulating salaries of officers, etc. In State v. Boyd, 19 Nev. 43, 5 Pac. 735, the supreme court had under consideration a statute attempting to regulate salaries, etc. Section 10 provides that the act "shall apply to all counties in this state in which there were cast more than eleven hundred and fifty votes, and less than thirteen hundred and fifty votes, at the general election held in eighteen hundred and eighty-two, in this state." In discussing this act, the court, among other things, said:

"It is apparent from an inspection of the statute that even this classification is illusory, because some of the provisions of the act are expressly applicable only to Washoe county, and others only to Esmeralda county. The statute does not, therefore, apply uniformly, even within the limited classification named. But the basis of classification cannot be sustained. Abstractly considered, the language of the section appears to contemplate a class of counties, but in its practicable operation the law is applicable to Washoe and Esmeralda counties only, and can never affect any other county. The legislature could, with equal right, designate these counties by name, as by the total vote cast at a past election. * * * In order to observe the uniformity required by the constitution, classification, if made, must be based upon reasonable and actual differences; the legislation must be appropriate to the classification, and embrace all within the class."

There is no doubt of the right of the legislature to limit the operation of statutes by classification to communities of a certain number of inhabitants, even though there should be only one such place within the state, for all have the possibility of reaching the number designated. State v. Donovan, 20 Nev. 75, 79, 15 Pac. 783. But, as was said by the court in Re Hennenberger (Sup.) 49 N. Y. Supp. 230:

"When the legislature goes beyond this, describing a local condition so accurately that it would be beyond a reasonable probability that it would become generally operative, it exceeds the authority delegated by the people, and its enactment becomes a nullity."

This opinion was affirmed in 155 N. Y. 420, 50 N. E. 61. In Com. v. Patton, 88 Pa. 258, the court, in referring to an act of like character, said:

"This is classification run mad. Why not say all counties named 'Crawford,' with a population exceeding sixty thousand, that contain a city named 'Titusville,' with a population of over eight thousand, and situated twenty-seven miles from the county seat? Or all counties with a population of over sixty thousand watered by a certain river, or bounded by a certain mountain? There can be no proper classification of cities or counties except by population. The moment we enter geographical distinctions, we enter the domain of special legislation, for the reason that such classification operates on certain cities or counties to the perpetual exclusion of all others."

Every law of this character concerning the valuation and assessment of property must be construed in the light of reason, common sense, and knowledge as to the values of the different classes of property. It was the duty of the state board of assessors to comply strictly with the letter and the spirit of the law. It could not make a law of its own. It could not depart from the authority delegated to it. It could not, as before stated, fix a value on the property of an individual taxpayer, because no such authority was given to it. It had no jurisdiction to fix the value except on "classes of property." And these classes should be constituted of property which has such attributes as would necessarily bring it within a well-defined class, and readily differentiate it from the other classes of property belonging to the same general species. The state board of assessors, created by the law, like a board of equalization or a board of county commissioners, is of special and limited jurisdiction, and, like all inferior tribunals, has only such powers as are specially conferred upon it. It is always essential to the validity of its acts that they should be authorized by some express provision of the statute, otherwise they are absolutely null and void. These general principles are elementary in their character, and have been frequently announced by the supreme court of this state, as well as others. In State v. Central Pac. R. Co., 9 Nev. 79, 88, which was a suit to recover delinquent taxes for the years 1869, 1870, and 1871, the board of county commissioners of Washoe county accepted payment of the sum of $22,355 in settlement of the sum of $74,000, which was the full amount of the taxes delinquent on the property of the corporation. The principal question discussed was whether or not the commissioners had any authority to make the compromise. It was held that the action of the board was without authority of law and void. In the course of the opinion, the court said:

"The board of county commissioners is an inferior tribunal of special and limited jurisdiction. It must affirmatively appear that the action of the board in compromising with the defendant was in conformity to some provision of the statute giving to it that power, else its order was without authority of law, and void. State v. Washoe Co. Board of Com'rs, 5 Nev. 319; State v. Ormsby Co. Com'rs, 6 Nev. 97; State v. Washoe Co. Com'rs, 6 Nev. 108. * * * The only authority giving to the commissioners any power to reduce or in any manner change the taxes as assessed is vested in them as a board of equalization, and while acting in that capacity it was held in State v. Washoe Co. Com'rs that they must literally comply with the plain provisions of the statute."

The same views were expressed by the court in State v. Central Pac. R. Co., 21 Nev. 172, 176, 26 Pac. 225, 1109, in relation to the power of the board of equalization. The statute there under consideration provided that the board should have the power to determine all complaints made in regard to the assessed value of any property. Bigelow, J., in delivering the opinion of the court, said:

"Without a complaint is made, it has no jurisdiction to act in the premises. People v. Goldtree, 44 Cal. 323; State v. Northern Belle Mill & Mining Co., 12 Nev. 89. And, after a complaint is once heard and determined, there is no provision for a new trial, a rehearing, or any further consideration of the matter. It follows from the principles already stated that the power to

reconsider, not being expressly given, does not exist. This statement of the law is fully borne out by the adjudicated cases."

Numerous authorities are cited in support of these views.

From the views herein expressed, does it not necessarily follow that the state board of assessors could not value any particular species of property without dividing the same into classes having reference to their character and value on some sensible basis? The "classes of property" which the board was authorized to make could not be founded upon odious, absurd, or unreasonable distinctions. The classes adopted "must be based upon reasonable and actual differences," otherwise the provisions of the constitution requiring "a uniform and equal rate of assessment and taxation" would be violated, and the action of the board would be null and void. The board had no power to make "classes of property" concerning lots in towns and cities upon which are erected two-story brick or frame buildings of certain dimensions at so much per front foot, without reference to their utility, business purposes, occupancy, or cash value. Such a classification would exhibit a greater dementia than the one referred to as "being run mad" in Com. v. Patton, 88 Pa. 258. The board grasped the thought that it had no authority to value all horses in the state at so much per head, and divided them into classes of property with reference to their value as work horses and stock horses, etc. It could not say "that all gray horses shall be valued at $100 each, and all sorrel horses at $75." Hawkins v. Mangrum (Miss.) 28 South. 872, 874. In fixing a valuation for cattle the board also divided them into classes of property to which they belonged, with reference to their value, as beef cattle, milch cows, etc., and did not put the "registered thoroughbred" in the same class as "stock cattle." The board could not value all cattle belonging to A., in Eagle Valley, at so much per head, and in Carson Valley, belonging to B., at so much per head. The board, if it had attempted to value land in this state, would, in the first instance, have been compelled to divide the same into classes, such as cultivated lands, unimproved lands, grazing lands, barren lands, etc., at so much per acre. This does not mean that each acre of land must be of the same value. This would, in most instances, if not in all, be impossible. But it does mean that the classes adopted by the board must be selected with reference to the value attaching to the particular property belonging to this class of property. So of railroads. The board had no jurisdiction, power, or authority to value any railroad at so much per mile without first selecting the classes of property to which it belonged, and the selection of the classes must have been made with reference to the constituents attaching to that particular class. It had no power to assess a railroad, or any other kind of property, to the individual owner thereof by name, or with sole reference to the number of miles, without definitely placing it within classes of property having reference to the value of all property within that class. This the board failed to do. There has been much discussion, in the opinions of the supreme court of this state, as to the proper method of arriving at the value of railroads for the purpose of assessment. It would serve no useful purpose to review these cases. They all deal with cases of

alleged excessive taxation, a subject not here necessary to be discussed. If I were to venture a suggestion on this subject, it would be to the effect that uniformity in the assessment of property can only be secured by the election of intelligent, impartial, and honest men to office, who will strictly adhere to the provisions of the constitution of this state, and assess all property of every kind at its true cash value. Railroads are of a more complex character than the other species of property above named, and it is argued by complainant that it cannot be divided into "classes of property," under the present act. But, be that as it may, it is apparent that the attempted valuation in this case cannot, either upon reason or authority, be sustained, because the action taken by the state board of assessors in valuing the Central Pacific Railroad by name, without making any class of property of railroads, was not within the power granted by the act under consideration; and upon that ground alone, without passing upon the other points, my conclusion is that complainant is entitled to the injunction prayed for. Let a decree be entered accordingly.