[No. 737.]

## EX PARTE A. B. SPINNEY.

PHYSICIANS AND SURGEONS—THE ACT TO PREVENT THE PRACTICE OF MEDICINE AND SURGERY BY UNQUALIFIED PERSONS CONSTITUTIONAL.—In construing section 6 of said act, which provides that it shall not apply "to those who have practiced medicine or surgery in this State for a period of ten years next preceding the passage of this act" (Stat. 1875, 47): *Held,* that said provision is not in violation of section 21 of Art. IV of the State Constitution.

IDEM—HOW FAR UNCONSTITUTIONAL.—*Held,* that there is some reason for requiring ten years' practice in this State as a qualification for the continued practice of medicine or surgery; but there is no sort of reason for requiring that practice to have extended over the particular ten years *immediately preceding the enactment of the law,* and to this extent the law is unconstitutional, because in violation of the fourteenth amendment to the Federal Constitution; but omitting the words "next preceding the passage of this act," leaves a good and perfect statute. *By Beatty, J.*

IDEM.—*Held,* that said section is not in conflict with any of the provisions of the State or Federal Constitution. *By Hawley, C. J.*

HABEAS CORPUS before the Supreme Court.

The facts are stated in the opinion.

*De Long & Belknap,* for Petitioner.

I. The act is special in a case where a general law could be made applicable. (Secs. 20 and 21 of Art. IV, Const. of Nev.)

This Court has laid down the rule that a law which does not embrace all persons in the same situation or condition is a special law. This is the most liberal rule,—the most

severe against our client, the most favorable to the State; it goes to the furthest extent to which any law-book or decision has gone to uphold a questionable legislative enactment. (7 Nev. 351; 20 Iowa, 343.)

II. Where all persons similarly situated or conditioned, is the sense of the distinction which courts make between general and special laws. (7 Nev. 351–3; Cooley's Const. Lim. 389–91, 392–3.)

III. The law is in violation of section 2 of Art. IV of the Federal Constitution.

IV. The law unjustly discriminates between citizens of this State. Laws taxing all merchants as such alike, containing discriminations against merchants with one eye, or unmarried merchants; laws exempting merchants from the payment of licenses, by reason of length of residence, or because they came to this coast in '49; laws imposing a heavier license upon merchants who had traded in this State nine years than those who had traded ten years; laws requiring as a prerequisite to practicing medicine that the practitioner shall have graduated at a college in the State of Nevada, are illustrations of unjust discrimination.

When the legislature imposes a qualification, it must be reasonable. What natural, reasonable or fair distinction exists between mere non-graduates who have practiced medicine ten years in this State or ten years in another State?

V. The law is in violation of the fourteenth amendment to the Federal Constitution, and is therefore void. (Kent's Analysis, 69; 1 Bish. on Crim. Law, Sec. 24; 16 Wallace, 43; *Ward* v. *Maryland*, 12 Wall. 430; *Paul* v. *Virginia*, 8 Wall. 180; *Slaughter-House Cases*, 16 Wall. 767; 18 Wall. 138–9.)

If when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed in *accordance with the apparent legislative intent*, wholly independent of that which was rejected, it must be sustained. (Cooley's Const. Lim. 176; *Lathrop* v. *Mills*, 19 Cal. 530; *Slauson* v. *City of Racine*, 13 Wis. 404; *Jones* v. *Robbins*, 8 Gray, 338; *Warren et al.* v. *Mayor, etc., of Charlestown*, 2 Gray, 98.)

*J. R. Kittrell, Attorney-General, and R. H. Taylor*, for the State.

I. As to general and special laws.    (*People* v. *Allen,* 1 Lansing, 248, 254; *Brooks* v. *Hyde,* 37 Cal. 366, 375; *Ex parte Yale,* 24 Cal. 241; *Youngs* v. *Hall,* 9 Nev. 218; *Cohen* v. *Wright,* 22 Cal. 317.)

II. Statutes will not be declared unconstitutional unless clearly and unequivocally repugnant to some provision of the Constitution which is direct and plain, and about the construction of which there is no doubt.   (6 Cranch, 87, 128, 188; 30 Iowa, 9; 62 Penn. 81, 286; 3 Den. 381, 394; 7 N. Y. 109; 19 Barb. 81, 84, 88; 20 Wend. 382.)

III. Part of a statute may be good, and will be enforced, while another portion of it is unconstitutional.    (39 Cal. 11; 29 Iowa, 399; 1 Gray, 21; 9 Nev. 337.)

By the Court, BEATTY, J.:

It appears from the petition and the return to the writ that the prisoner is detained in the custody of a constable of Storey County, by virtue of a warrant of arrest issued upon a complaint charging him with practicing medicine in violation of the provisions of an act of the legislature entitled "An act to prevent the practice of medicine and surgery by unqualified persons." (Stats. of 1875, 467.)

The illegality of the imprisonment is alleged to consist in this: that the statute defining the offense and prescribing the penalty is unconstitutional and void, because "the said act is a special law in a case where a general law is applicable, contrary to the provisions of section twenty-one of article four of the Constitution of this State, and is also in conflict with the fourteenth amendment to the Constitution of the United States, which declares 'that no State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States;' and also the second section of article four of the Constitution of the United States, which declares that 'the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States.'"

The act, to the validity of which these objections are urged, prohibits all persons from practicing medicine or surgery in this State who have not received a medical education and a diploma from some regularly chartered medical school *bona fide* existing at the time the diploma was granted. It requires every physician or surgeon resident or about to become a resident here, to file with the county recorder of the county where he is about to practice, a copy of his diploma, and to exhibit at the same time the original diploma, or a certificate of his graduation from the dean of his school, and to make proof of his identity. A penalty of fine and imprisonment is imposed for every violation of any of these provisions. A subsequent section of the act reads as follows: "Sec. 6. No portion of this act shall apply to any person who, in an emergency, may prescribe or give advice in medicine or surgery in a township where no physician resides, or when no physician or surgeon resides within convenient distance; nor to those who have practiced medicine or surgery in this State for a period of ten years next preceding the passage of this act; nor to persons prescribing in their own family."

The petitioner admits the power of the legislature to define the qualifications of those who shall be licensed to practice those callings or professions the exercise of which may affect the public health or safety, and concedes that this law would be entirely constitutional, in that view, if it stopped short with prohibiting all except medical graduates from practicing. But he contends that the exception in favor of those who have practiced for ten years in this State is not founded upon any natural, fair or reasonable distinction, and makes the law special within the meaning of the prohibition in our Constitution against special laws where general laws can be made applicable, and makes it a discriminating law within the prohibitions of the Federal Constitution.

I will consider these propositions separately, although the argument with respect to each is, to a great extent, the same.

The law says, in effect, that, outside of his own family, except in the specified cases of emergency, no man shall practice or prescribe as a physician or surgeon in this State unless he is either a regular graduate, or unless he has practiced in this State for ten years next preceding the passage of the act. This is the rule of qualification for medical or surgical practice.

It is contended that it is purely arbitrary in these particulars: First. In admitting those who have practiced ten years and excluding those who have practiced nine years and eleven months. Second. In admitting those who have practiced the requisite period in this State and excluding those who have practiced during the same period in other States. Third. In making a distinction between those who have practiced in this State during the ten years next preceding the passage of the act and those who have practiced just as long or longer in this State, but not continuously during the last ten years.

As to the first point, it was not much insisted upon. It was admitted that experience in the treatment of disease or injuries is, in itself, a sort of qualification for the practice of medicine or surgery; that long experience may constitute a first-rate qualification, and a very short experience little or no qualification. This being conceded, it seems necessarily to follow that it is within the province of the legislature to declare what is the *minimum* amount of experience that shall authorize a license to practice. Wherever the line is drawn it must be in one sense arbitrary, for there will be no appreciable difference between those who are barely included and those who are barely excluded by it, and it will no doubt often happen that some will be excluded who are really better qualified than some who are included. But at the same time, there can be no doubt that the class admitted to practice by such a rule will, as a whole, possess qualifications superior to those who are excluded. Exactly the same objection could be made to the rule which makes graduation and the possession of a diploma the test of ability. There is no appreciable

difference between the student who barely passes a successful examination and the one who barely fails in the same college, and a student who fails signally at one college where a high standard is maintained, might have passed easily at another college maintaining a lower standard. The unfairness of its operation in individual instances is, however, an evil incident to the generality of the rule, and points to an objection the very opposite of the one suggested.

The second point was more strenuously insisted upon, the petitioner contending that there cannot be any reasonable ground for a distinction between those who have practiced ten years in this State and those who have practiced ten years elsewhere.

But I am not prepared to say that there may not be grounds for such a distinction. Disregarding individual exceptions, which can never be made the basis of general legislation, it may have been considered that physicians and surgeons who are versed in the sciences upon which the intelligent practice of their arts depends, are always graduates, and that those who are not graduates, and whose qualifications depend mainly upon their individual experience, while they may be reasonably safe advisers in the locality and among the diseases they are accustomed to, might be very unsafe advisers in another locality and climate, among a population mainly employed in other avocations, and where, as a consequence, different diseases prevail, and the same diseases may be modified by different surrounding circumstances, not only in their development, but even in their earliest stage. To express the idea more plainly, the legislature may have thought: The graduate is a man of science; his knowledge enables him to refer effects to their causes; it enables him to discriminate between the essential relations of phenomena and their accidental coincidence; it is sufficiently comprehensive to anticipate the operation of new causes and the influence of changed conditions. He will, therefore, be able to adapt his practice to the peculiar diseases or modifications of

disease of any locality. The mere practitioner, on the other hand, who has not pursued the regular course of medical education, and who has learned merely to meet a certain symptom with a certain drug, without knowing what pathological condition is indicated by the symptom or what is the specific action of the drug, may do very well in the diseases he is accustomed to, or where the same symptom means the same thing, and the accustomed remedy meets the same counteracting or co-operating conditions; but he will be dangerous among new diseases or new modifications of disease.

If this was the idea of the legislature, there is certainly some reason and some truth to sustain it, and we are bound to presume that if they had no better reason for the rule they have established, the true reason was found in the consideration indicated. How much truth there may be in these suggestions, or how important it may be as a principle of discrimination, was a question solely for the legislature. Having the power to discriminate, it had full discretion, so far as the clause of our Constitution in question is concerned, to discriminate upon any principle which will serve as the basis of a general classification. The question was one of policy, and its decision is not subject to our review.

It is urged, however, that in point of fact there is no essential difference of climate between this State and Utah or California. This may be true, or may not be; but I again say of that the legislature was the judge. There is undoubtedly a difference between Nevada and Florida or Louisiana. If the extremes were to be divided, it could only be by a geographical line, and wherever that line was drawn it must necessarily have been arbitrary in the same sense that the distinction between ten years and nine years and eleven months is arbitrary.

It may be said, in conclusion, that the idea of the necessity of local experience as a qualification to practice a licensed calling is by no means novel. The case of pilots is an extreme case, where the necessity is apparent. The case of lawyers, however, is entirely analogous to that of phy-

sicians, and certainly it has not been unusual to require a local apprenticeship to the law as a condition of license to practice it.   I presume the constitutionality of a law requiring a term of service in the office of a Nevada attorney as an essential condition of license to practice here would not be questioned, and yet there is probably less difference between the laws and law-practice of California and Nevada than there, is between diseases and their treatment in the two States.

The third point urged by the petitioner is not so easily met.   There does not seem to be any reason for allowing a physician or surgeon to continue practice because he has been practicing during the last ten years, which does not equally apply to the case of one who has 'practiced ten years or more, but not continuously during the ten years just elapsed.  If any reason for this discrimination has been suggested, it is so extremely fanciful that it cannot be supposed to have influenced the legislature, and I feel bound to say that the distinction *appears to me* to be purely arbitrary. This conclusion brings me to the important question in the case: Can this Court hold a law to be in conflict with section 21 of Art. IV of our Constitution because it limits the exercise of a calling or profession to a class of citizens only distinguished from others by a rule which *appears to us* to be founded upon a purely arbitrary distinction?   The only authority upon this point to which we have been referred is the opinion of the chief justice in the case of *The State ex rel. Stoutemeyer* v. *Duffy* (7 Nev. 348).   That, however, was not the opinion of the Court.   It was not concurred in by either of the associate justices, and one expressly dissented from the views expressed.   It is, therefore, an authority only so far as the reasoning appears satisfactory.  It assumes, and is undoubtedly correct in so assuming, that the object of the constitutional provision in question was the prevention of unfair discrimination between citizens, and to secure to every one the enjoyment of the same privileges which are enjoyed by others similarly circumstanced.   From this it proceeds to argue that the legislature may not only not pass

a law which is special in terms, that is, which confers special privileges or imposes special burdens upon selected individuals, but it cannot do the like with respect to a class, unless that class is distinguished by some trait that is important or generally recognized as the basis of classification. For if it can evade the force of the constitutional restriction by resorting to merely arbitrary distinctions, the restriction ceases to be of any value. There is, undoubtedly, much force in this argument, of which I have merely given the outline. But to accept its conclusions involves a very serious consequence—no less, indeed, than this, that the courts must undertake to decide in every instance what is and what is not an arbitrary basis of distinction. Now, this is by no means always a question of law. It must very often, if not always, be a question of fact, depending for its solution upon conflicting evidence of a character not judicially cognizable, and which, if it was all produced and thoroughly weighed and considered, might lead different minds to different conclusions. But courts would have to decide such questions without evidence, or at least without all the evidence, and how uncertain their judgments would be is illustrated by the fact that, in the case referred to, of the two judges who discussed the question, one was clearly of the opinion that the distinction in question was substantial and important, while the other was equally clear that it was trivial and arbitrary. One judge, in other words, thought the rule was justified by motives of sound policy, and the other thought it altogether "unnecessary and unjust."

The result of the discussion seems to indicate the fault of the argument of the chief justice. In order to decide whether a rule is arbitrary or not, it must first be decided whether it subserves a good policy or not. But the question of policy is a question for the legislature and not for the courts. Whenever it becomes apparent that the public welfare demands that the exercise of any privilege be further restricted, it is the right and the duty of the legislature to restrict it accordingly, and it is for the legislature,

and not for the courts, to decide upon the existence and extent of the necessity. So in regard to this case, admitting the object of the constitutional provision in question to be the prevention of arbitrary discriminations, I say that it only seeks to accomplish that object so far as it may be effected by forbidding special laws. To that extent we can enforce it. But when a law is not special in terms, but is alleged to be so in fact, though not in form, because it restricts the privileges of a class of citizens without any justification of policy or expediency, we can only say that so far at least as this provision of our Constitution is concerned, the legislature is left the sole judge of questions of policy and expediency, and we must submit to their decision. In saying this I do not overlook the consequences involved in the position. They are pointed out in the opinion referred to as follows: "If so, the legislature might confer certain rights and privileges upon all persons possessing certain physical characteristics, to the exclusion of all others; as, for example, those having hair of a certain color, or who might be of a certain stature, etc. The same argument is much insisted upon by the petitioner. But I think it is not sound. The *reductio ad absurdum* is often a useful mode of demonstration, but it is not always infallible— never in fact when the existence of the absurdity is quite possible. Its validity in this case depends wholly upon the assumption that the courts must of necessity have the power to prevent the legislature from doing anything absurd or unjust. But such an assumption is wholly gratuitous. Nothing is easier than to point out endless absurdities that the legislature might enact while keeping clearly within the constitutional limitations upon its power. For instance, no one will deny the power of the legislature to fix or change the penalties of criminal offenses, but it follows, from this admission, that they could punish vagrancy or larceny with death, and make murder merely a finable misdemeanor. Or, to take a case more directly in point: It is admitted that age and sex have always been marks of classification, and laws including all persons so classified

are unquestionably general laws. It follows from this that a valid law might be passed prohibiting all persons under sixty years of age from practicing law, or forbidding any but a female physician to visit a female patient. In point of absurdity such laws would be quite as bad as a law prohibiting men from practicing medicine if they had red hair, or law, if they were over six feet high. The truth is, the protection we enjoy against such absurdities of legislation is not derived from constitutional restrictions, but from the force of public opinion and the character of our representatives. This Court has the power to keep the legislature within the terms and plain import of the Constitution. To superintend the conscience and intelligence of legislators, and see that they pay a due regard to considerations of justice and expediency in the enactment of laws, is the business of the people. The sooner this truth is recognized the better.

This view of the extent of our powers does not leave the people of the State so utterly defenseless as counsel assume. Most of the important and fundamental rights of citizens are protected by specific provisions of the State or Federal Constitution, and do not depend for their immunity upon this general inhibition of special legislation. In the case supposed by counsel of a law graduating the amount of merchants' licenses according to length of residence in the State, the requirement that taxation shall be equal and uniform would prevent its operation.

But is this law in conflict with the Constitution of the United States? The first provision referred to, considered with reference to this case, amounts to no more than this: that citizens of other States are entitled to practice medicine and surgery here on precisely the same terms and subject only to the same restrictions as our own citizens. Now this law makes no distinction in terms between our own citizens and citizens of other States. It merely prescribes the qualifications that practitioners are required to possess, and admits all to practice who can bring themselves within the rule, whether they are citizens of this State or other

States. But it is argued that one of the sorts of qualification recognized is such, that of necessity none but citizens of this State can possess it. This is so, but it does not follow, therefore, that the law is unconstitutional; for if the qualification is in itself reasonable, and such as tends to subserve public interests, the legislature had the right to exact it, and the circumstance that citizens of other States cannot possess it may be a misfortune to them, but is no reason why a precaution, proper in itself, should be dispensed with. Thus it appears that the solution of this question also involves a preliminary inquiry into the policy of the law. But who is to decide questions of policy? I have endeavored to show that that is the function of the legislature, and if not its exclusive function, that we at least have no right to assume it for the purpose of enforcing the *spirit* of a constitutional provision which makes the form of the law, and not its object or purpose, the test of its constitutionality.

But I think the provisions of the Federal Constitution above referred to give greater scope to the judicial authority. They regard the substance, not the form of laws; are aimed against all arbitrary discriminations against citizens, whether created by a general or special law, and the courts, for the purpose of enforcing them, must necessarily consider the apparent object and intent of a law which seems to abridge the privileges or immunities of a citizen, or class of citizens, of the United States. Now I entertain no doubt that amongst the inherent privileges of the citizens of a free country is the right to pursue a lawful calling in a lawful manner, that is, subject to such restrictions and none other as may be deemed necessary for the public welfare. What restrictions are necessary in that view it is the province of the legislature to decide, and its decision, no matter how ill advised it may appear to be, is binding on the courts whenever it appears to have been based upon motives of policy or general expediency. But when a law excludes a class of citizens from the pursuit of a useful, honorable and profitable avocation, and there is no assignable motive of

policy or expediency to justify the exclusion; or, in other words, when it is apparent that the whole scope and object of the law is to make a forbidden discrimination, without looking to the attainment of any public benefit, I think a court should not hesitate to say that such a law is forbidden by the fourteenth amendment to the Federal Constitution.

With respect to this law I have said in another connection that I do not feel justified in holding that there is no good reason for requiring ten years' practice in this State as a qualification for the continued practice of medicine or surgery. But I do think that there is no sort of reason for requiring that practice to have extended over the particular ten years immediately preceding the enactment of the law, and to this extent I am prepared to go in holding it unconstitutional. To so decide, however, would leave a good and perfect statute, omitting only the words "next preceding the passage of this act;" and it would follow that the prisoner must be remanded. In this conclusion the Court is agreed, though my associates differ from me in the opinion that the law is unconstitutional in any particular. So far as this case is concerned the diversity in the views of the members of the Court is of no consequence, and if a case should ever arise where the particular point upon which we differ became material, it would have to be decided in another form.

It is ordered that the prisoner be remanded.

HAWLEY, C. J., concurring:

The exception in the act, to which the objections of counsel are directed, is general, not special; it applies to all physicians and surgeons who have practiced medicine or surgery in this State for the period of time therein mentioned. It does not come within any of the prohibitions, against the passage of special laws, contained in our State Constitution; nor is the exception in conflict with the fourteenth amendment to the Constitution of the United States, for it does not, in my opinion, abridge the privileges or immunities of any citizen of the United States; and it is not in violation of the second section of Art. IV, because it

leaves the citizen of each State, as therein provided, "entitled to all the privileges and immunities of the citizens in the several States."

Under the provisions of the Constitution of the United States, every citizen has the undoubted right to pursue any lawful profession, calling or employment, in a lawful manner; but these pursuits are always subject to such restrictions as may lawfully be prescribed by the legislature of each State, in order to protect the public health and promote the general interests of society, and as long as such restrictions leave the field of employment open for every citizen of the United States, who comes endowed with all the necessary qualifications, to practice his profession or pursue his calling, the law cannot be declared unconstitutional.

The act in question does not, as was argued by counsel, prohibit any physician or surgeon from the practice of medicine or surgery because he is not a citizen of this State; it makes a medical qualification the test of the right to practice. The right of the legislature to prescribe qualifications based upon professional skill, or knowledge, so as to prevent unqualified persons from practicing any profession, has been, time and again, recognized in the various courts of the several States and in the Supreme Court of the United States. The recognition of this power necessarily implies that the legislature is the sole judge of the qualifications, and that the establishment of any rule would to some extent be arbitrary and an imposition of some restraint upon its individual exercise.

If a law should be passed by the legislature prescribing a qualification based upon the color of the hair or skin, or relating to the size, or stature, or other physical formation of individuals, I am inclined to think it would be in violation of the fourteenth amendment, for under its provisions it appears to me that every citizen, whether white or black, hale of limb, or sound in body, has the right, subject to the laws prescribing the necessary legal, medical or scientific qualifications, to enter the arena of his chosen profes-

sion and there contest upon equal terms with other citizens in the battle of life for position, eminence and success; but it will be time enough to decide these questions when they arise.

The real test of qualification in the act under consideration, as before stated, is based upon medical skill and knowledge. The physician or surgeon entitled to practice must have received a medical education and must have obtained a diploma from some regularly chartered medical school. Now the legislature saw fit, in establishing this test, to except from its provisions a certain class of physicians and surgeons; in so doing it in effect declared—to state the extreme cases—that the physician or surgeon who had practiced his profession in this State for the period of ten years immediately preceding the passage of this act, was as well qualified, in its judgment, to continue the practice of his profession, as the student, coming fresh from the halls of college with his diploma, was to commence it.

In adopting this exception the legislature did not infringe upon any provision of our State or Federal Constitution, and we are not therefore required to state what, in our opinion, may have been the motive for the enactment of this law. The reasons which induced the legislature to insert the exception may have been as varied as the different minds of its members. It is simply the question of power that we are called upon to discuss and determine. Whether the power of the legislature was reasonably or unreasonably exercised; whether it was wise or unwise, expedient or inexpedient, to enact the law, are questions left exclusively to other departments of our State government to decide, and their judgment must necessarily be decisive upon these questions.

I concur in the judgment remanding petitioner into custody.

EARLL, J., not having heard the oral argument, did not participate in the foregoing decision.