STATE, HARRY L. GRANT, Complainant, *vs.* EVAN B. ROSENKRANS.

MARCH 8, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Constitutional Law. Practice of Dentistry. Police Power.*

Gen. Laws, cap. 155, § 4, as amended by Pub. Laws, cap. 470, of May 21, 1897, and § 6, as amended by Pub. Laws, cap. 1457, of April 23, 1907, and by Pub. Laws, cap. 1553 of April 30, 1908, providing for examinations in the practice of dentistry before the board of registration in dentistry, and for the issuing of certificates entitling those passing the examinations to practice, and for penalties for violations of said chapter, are not obnoxious to the provisions of art. I, § 10, of the constitution, or of § 1, of art. XIV, of the amendments to the constitution of the United States, in that they deprive a person of the right to continue practice in this State, which right he en-

joyed before their enactment; since the statute, which is an exercise of the police power, permits such right to be acquired only after taking certain statutory steps, and the fact that a person once had such right and abandoned the same is immaterial.

(2)  *Same.  Delegation of Legislative Power.*

Neither is said section 4 of Gen. Laws, cap. 155, as amended by Pub. Laws, 470, of May 21, 1897, obnoxious to art. IV, § 2, of the constitution, as a delegation of legislative power to the board of registration in dentistry.

(3)  *Same.  Privileges of Citizens of United States.*

Neither are said sections obnoxious to the provisions of the United States constitution—art. IV, § 2, in denying to citizens of another State coming into this state the privileges and immunities of citizens of this state and art. XIV, § 1, of the amendments, in depriving a person of the privileges or immunities as a citizen of the United States which he enjoyed before the passage of said acts—since the act allows to any person coming into the State the privilege of citizens of this State to practice dentistry after compliance with the law regulating such practice, and imposes no special burden on any person or class.

(4)  *Same.  Full Faith and Credit.*

Neither are they obnoxious to the provisions of Cons. United States, art. IV, § 1:  "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state," for even assuming that certificates granted by other States, entitling a person to practice dentistry in such states, come within this provision of the United States constitution, there is nothing in chapter 155 which prevents such certificates being accepted as evidence of the facts therein stated, which is all the faith and credit required to be given them, *but* no State has such extraterritorial jurisdiction that it can by its certificate confer upon the person named therein the *right* to practice his profession in another State.

(5)  *Same.  Due Process of Law.*

Neither are they obnoxious to the provisions of Cons. United States, art. XIV, § 1, of amendments, in depriving a person of liberty or property without due process of law.

CRIMINAL COMPLAINT.  Heard on certification on constitutional questions.

DUBOIS, C. J.  This is a criminal complaint brought by the secretary of the board of registration in dentistry, before the District Court of the Sixth Judicial District, wherein the defendant is charged with the practice of dentistry, in the city of Providence, in this State, from the first day of July to the twelfth day of August 1909, without having first received a certificate, from the board of registration in dentistry in this

State, that he had passed a satisfactory examination, with reference to his knowledge and skill in dentistry, before said board, and without having complied with the provisions of chapter 155 of the General Laws of this State, and the amendments thereto.

The defendant plead not guilty; and upon trial in said District Court, was found guilty and sentenced to pay a fine of fifty dollars and costs of prosecution and conviction, from which sentence the defendant appealed to the Superior Court, wherein he was permitted to file the following special plea in bar:

"And now comes the said Evan B. Rosenkrans, the defendant above named and he defends, etc. and says that the said Henry L. Grant ought not to have and maintain his said complaint, warrant, arrest and judgment against him, the said Evan B. Rosenkrans, because he says that during all the times mentioned in said complaint and warrant, he, the said defendant, held a certificate from the State Board of Registration in Dentistry of the State of New Hampshire, and also a certificate from the State Dental Commissioners of the State of Connecticut, certifying that said Evan B. Rosenkrans was competent and fit to practice dentistry, which certificates he had received from said boards several years before the time alleged in said complaint and warrant, and as evidence of said fitness and competency, each of said boards issued and delivered to him a license to practice dentistry, which he, the said Evan B. Rosenkrans then held and now holds; that the said defendant also, before said time alleged in said complaint, had been continuously and successfully practicing dentistry for the period of about 26 years; that evidence of the existence of said certificates and of the length of time said defendant had practiced as aforesaid, was presented to the Dental Board of the State of Rhode Island by said defendant, in the form of a sworn petition demanding a license and offering to pay therefor and submitting said certificates in evidence to said board, all more than two years before the complaint and warrant, arrest and judgment herein, and that said board has always refused and still refuses to issue said license or any license to him, on the ground that said board cannot do so under the laws of this State. Copies of said licenses

are herein set forth marked respectively 'defendant's exhibit A' and 'defendant's exhibit B' and are hereby made a part of this plea; and the defendant further states that he was practicing dentistry in the State of Rhode Island about a year before the enactment of legislation in the State of Rhode Island creating a state dental board.

## "DEFENDANT'S EXHIBIT A.

"'STATE OF NEW HAMPSHIRE,

"'BOARD OF REGISTRATION IN DENTISTRY.

"This certifies that E. Benjamin Rosenkrans in compliance with the law, has passed an examination with reference to his knowledge and skill in dentistry and dental surgery. The said examination in Anatomy, Physiology, Pathology, Histology, Chemistry, Metallurgy, Materia-Medica, Operative and Prosthetic Dentistry having proved satisfactory to the Board he is hereby authorized to practice dentistry in the State of New Hampshire.

"' Given under the hands and seal of the Board of Registration in Dentistry this Fourteenth day of June in the year 1901.

"'GEORGE A. BOWERS, D. D. S., *President.*

"'WILLIAM R. BLACKSTONE, M. D.

"'FREDERIC H. BROWN, D. D. S.

"'New Hampshire Board of Registration in Dentistry,

"'W. R. BLACKSTONE, *Secretary.*'"

---

## "DEFENDANT'S EXHIBIT B.

"'STATE OF CONNECTICUT,

"'DENTAL COMMISSIONERS.

"' To all persons to whom these Presents shall come, GREETING:

"'Know ye, that E. Benjamin Rosenkrans of Norwich, in the county of New London in the State of Connecticut, having made his application to this Commission in due form and the same having been duly considered and examined, we the Dental Commissioners of Connecticut, have caused his name to be enrolled as a Lawfully Registered Dentist on the records of this Commission, and he is hereby entitled to all the rights

and privileges of a lawfully registered dentist within the State of Connecticut.

"'In testimony whereof we have hereunto set out hands and official seal at Hartford, Connecticut, this 23rd day of November, A. D. 1893.

"'CINILION FONIS, D. D. S., *President.*

"'R. WENTWORTH BROWNE, D. D. S.

"'WILLIAM J. RIDER,

"'CHARLES P. GRAHAM,

"'GEORGE J. PARMELE, M. D., D. M. D.,

"' *Recorder.*

"' Dental Commissioners, Seal of Connecticut.

"'No. 116.'"

---

"And the defendant further says that by virtue and authority of said certificates and of the more than twenty-six years of experience and practice of the defendant as aforesaid, and also because he had been and was practicing dentistry in the State of Rhode Island about a year before the enactment of legislation in the State of Rhode Island, creating a state Dental Board, he, the said defendant, was qualified to practice dentistry before and at the time alleged in said complaint and warrant; and this the said defendant is ready to verify; wherefore he prays judgment, whether said Henry L. Grant ought to have and maintain his said complaint, warrant, arrest and judgment against him."

To which special plea the complainant filed the following demurrer:

"The complainant comes and demurs to defendant's special plea in bar; and for reasons of demurrer says:

"1.    That the said plea and the matter therein contained and the manner and form as the same are above pleaded and set forth are not sufficient in law to bar or preclude the said complainant from having or maintaining the said action against the said defendant.

"2.    And the complainant further demurs to said plea because the holding of a certificate from the State Board of Regis-

tration in Dentistry of the State of New Hampshire and a certificate from the State Dental Commission of the State of Connecticut, as set forth in said plea, is not sufficient in law to bar or preclude said complainant from having or maintaining the aforesaid action.

"3.   And the complainant further demurs to said plea because the continuous and successful practicing of dentistry for the period of about twenty-six years, as set forth in said plea, is not sufficient in law to bar or preclude the complainant from having or maintaining the aforesaid action.

"4.   And the complainant further demurs to the said plea of the said defendant because practicing dentistry in the State of Rhode Island about a year before an act of legislation in the State of Rhode Island creating a State Dentistry Board, as set forth in said plea, is not sufficient in law to bar or preclude said complainant from having or maintaining his aforesaid action.

"Wherefore the complainant prays that said plea may be dismissed with the reasonable costs to your complainant."

Upon hearing before a justice of the Superior Court the demurrer was sustained, and thereupon, under the provisions of C. P. A. § 474, which reads as follows: "Whenever, in any action or proceeding, civil or criminal, pending before any court, the constitutionality of an act of the general assembly shall be brought in question upon the record, the court shall forthwith certify the question to the supreme court to be heard and determined," the following order was entered in said court certifying to this court the constitutional questions:

"In the above entitled cause, the constitutionality of Section 4 and Section 6 of Chapter 155 of the General Laws of the State of Rhode Island, as amended by Section 1 of Chapter 470 of the Public Laws passed May 21, 1897, and by Section 1 of Chapter 1457 of the Public Laws passed April 23, 1907, and by Section 1 of Chapter 1553 of the Public Laws passed April 30, 1908, having been brought in question upon the record in this cause, it is hereby ordered that the following constitutional questions be certified and transmitted forthwith to the Supreme Court for decision:

## " ' 1.

" ' Are said sections of said acts of the General Assembly as above set forth and referred to unconstitutional and void in this; that they are in conflict with Section 10 of Article 1 of the Constitution of the State of Rhode Island in that they deprive the defendant in this case of the right to continue to practice dentistry in the State of Rhode Island, which right of property he enjoyed before the enactment of said sections of said statute?

## " ' 2.

" ' Are said sections of said acts of the General Assembly as above set forth and referred to unconstitutional and void in this; that they are in conflict with Section 1 of Article 14 of the amendments of the Constitution of the United States in that they deprive the defendant in this case of the right to continue to practice dentistry in the State of Rhode Island, which right of property he enjoyed before the enactment of said sections of said statute.

## " ' 3.

" ' Are said sections of said acts of the General Assembly as above set forth and referred to, unconstitutional and void, in this; that they conflict with Section 2 of Article 4 of the Constitution of the State of Rhode Island, vesting all legislative power in the General Assembly, whereas in and by the said sections of the said acts of the General Assembly legislative power is granted to an examining board, thus allowing the examiners to make any law they please as to the requisite qualifications for the practice of dentistry; limited only by the will of the examiners, and which is an unlawful delegation of the legislative power to said board of examiners?

## " ' 4.

" ' Are said sections of said acts of the General Assembly as above set forth and referred to, unconstitutional and void, in this; that they conflict with Section 2, of Article 4 of the Constitution of the United States, in that they deny to citizens of another state coming into this state, the privileges and immunities of citizens of this State?

" ' 5.

" ' Are said sections of said acts of the General Assembly as above set forth and referred to, unconstitutional and void, in this; that they conflict with Section 1 of Article 14 of the Amend- ments of the Constitution of the United States in this that thereby the defendant in this cause is deprived of the privilege or immunity as a citizen of the United States which he enjoyed before the passage of said acts of the General Assembly?

" ' 6.

" ' Are said acts of the General Assembly as above set forth and referred to, unconstitutional and void, because they conflict with Section 1 of Article 4 of the Constitution of the United States, in that they deny to each and every state the full faith and credit required to be given to the public acts of such State?

" ' 7.

" Are said sections of said acts of the General Assembly as above set forth and referred to, unconstitutional and void, because they conflict with Section 1 of Article 14 of the amend- ments to the Constitution of the United States, in that the State of Rhode Island may deprive the defendant of his liberty and property without due process of law?' "

The sections of statutes whose constitutionality is thus questioned read as follows (Gen. Laws, cap. 155, §§ 4 and 6): "SEC. 4. All persons not graduates of regular dental colleges, who may hereafter desire to enter the practice of dentistry in this state, may appear before said board and be examined with reference to their knowledge and skill in dentistry; and to such as undergo a satisfactory examination, certificates to that effect, signed by said board, shall be issued. All persons holding diplomas from reputable dental colleges may present the same to said board, and on such presentation shall receive certificates without examination."

"SEC 6. Any person who shall practice or attempt to prac- tice dentistry in this state, in violation of the provisions of this chapter, shall be deemed guilty of a misdemeanor and liable to indictment therefor, and upon conviction shall be fined not less

than fifty nor more than one hundred dollars for each and every offence; and such person's failure to duly register with the board of registration in dentistry shall be evidence of such violation."

(Pub. Laws, cap. 470, passed May 21, 1897, § 1.)

"SECTION 1. Section 4 of Chapter 155 of the General Laws is hereby amended so as to read as follows:

" 'SEC. 4. All persons who hereafter intend to enter the practice of dentistry in this state, shall appear before said board and be examined with reference to their knowledge and skill in dentistry; and to such as pass a satisfactory examination, certificates to that effect, signed by the president and secretary of the board, shall be issued; and thereupon the names of such persons receiving certificates as aforesaid shall be registered with said board.' "

(Pub. Laws, cap. 1457, passed April 23, 1907, § 1.)

"SECTION 1. Section 6 of Chapter 155 of the General Laws is hereby amended so as to read as follows:

" ' SEC. 6. Any person who shall practice or attempt to practice dentistry in this state without being registered with said board and obtaining a certificate as required by this chapter, or who shall violate any of the provisions of this chapter and any person or corporation owning or carrying on a dental business and in said business employing or permitting any person to practice dentistry in this state without being registered and obtaining a certificate as aforesaid, shall be deemed guilty of a misdemeanor and shall be liable to indictment therefor, and upon conviction shall be fined not less than fifty dollars nor more than one hundred dollars for each and every offense; and the opening or maintaining of a dentist's office, the displaying of a dentist's sign or doorplate, or the advertising of a readiness to practice dentistry in this state in the public prints, or by cards, circulars, posters, or in any other manner, by any such person, shall be evidence of such violation." '

and (Pub. Laws, cap. 1553, passed April 30, 1908, § 1.)

"SECTION 1. Section 6 of Chapter 155 of the General Laws is hereby amended so as to read as follows:

" 'SEC. 6. Any person who shall practice or attempt to practice dentistry in this state without being registered with said

board and obtaining a certificate as required by this chapter, or who shall violate any of the provisions of this chapter, and any person or corporation owning or carrying on a dental business and in said business employing or permitting any person to practice dentistry in this state without being registered and obtaining a certificate as aforesaid, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not less than fifty dollars nor more than one hundred dollars for each and every offence; and the opening or maintaining of a dentist's office, the displaying of a dentist's sign or doorplate, or the advertising of a readiness to practice dentistry in this state in the public prints, or by cards, circulars, posters, or in any other manner, by any such person, shall be evidence of such violation.'"

(1)      The first question presented must be answered in the negative. The constitutional provision therein referred to, viz., article 1, section 10, embraces rights of the accused in criminal prosecutions, and the particular portion thereof to which the statute in question is deemed to be obnoxious reads as follows: "nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land." The property of which the defendant claims that the statute deprives him is the right to practice dentistry in the State of Rhode Island, which right of property he claims to have enjoyed before the enactment of the statute. This claim is based upon his special plea, in bar, which, so far as the facts were pleaded are concerned, the complainant, by demurrer, admits to be true. The statement involved in this consideration is a follows: "and also because he had been and was practising dentistry in the State of Rhode Island about a year before the enactment of legislation in the State of Rhode Island, creating a State dental board, he, the said defendant, was qualified to practice dentistry before and at the time alleged in said complaint." The statement evidently means that, although he had been practicing dentistry in Rhode Island prior to and up to a time stated as about a year before the enactment of legislation regulating the practice of dentistry, he was not a resident of the State at the time of the passage of such legislation, and had not been for

about a year. Pub. Laws, cap. 712, passed June 1, 1888, entitled "An act to establish a board of registration in dentistry," was the first legislation, in this State, upon the subject. The first section thereof provided for the appointment of five graduates in dentistry, who shall constitute a board of registration in dentistry. The provisions of the act, relating to registration of persons engaged in the practice of dentistry at the time of the passage of the act, read as follows:

"SEC. 3. Within three months from the time of the passage of this act, it shall be the duty of every person engaged in the practice of dentistry at that time in the State, to cause his or her name and place of business to be registered with said board, who shall keep a book for that purpose; and persons so registering shall receive a certificate to that effect from the board." Section 4 provides for examination of all persons, not graduates of regular dental colleges, who may desire to enter the practice of dentistry, in this State, subsequent to the passage of the act. Sections 5 and 6 of the act relate, respectively, to fees and violation of its provisions. If the defendant had been a resident of the State, and a practitioner in dentistry therein, at the time of the passage of the act, he could, in common with all others of the profession herein at that time, have registered, and have obtained his certificate, under the statute, without any examination as to his qualification. If he was not a practitioner of dentistry within the State, or, being in the State, he had seen fit to avoid a compliance with the requirements of the statute for more than three months from the date of its passage, he would then have become subject to be examined concerning his knowledge and skill in dentistry. If the defendant had a right to practice dentistry in Rhode Island before the passage of the act, it was not taken away from him, but was abandoned by him; for he sought fresh fields and pastures new elsewhere, and left the practice in this State to be attended to by his professional competitors. The mere fact that there was no law here regulating the practice at the time of his practicing and at the time of his departure is no reason why the legislature should continue to refrain from exercising its police power over that profession; nor does it furnish any ground for regarding him as an exception

to any law that might be passed upon that subject in his absence. It seems from his special plea in bar that he was willing to and did ·comply with the laws of the State of New Hampshire and Connecticut, submitting to an examination in the State of New Hampshire, and obtained certificates enabling him to practice in those States.  The State of Rhode Island requires no more from him than the State of New Hampshire did, but he is unwilling to comply with the Rhode Island law because he was engaged in the practice of dentistry here before there was any law upon the subject.

The statute does not deprive him of the right to practice dentistry in this State.  It merely requires him to submit to an examination as to his qualifications, in that regard, which he asserts that he possesses.  By refusing to comply with these reasonable and statutory requirements he deprives himself of the right to practice, and can not throw upon the statute the onus of his exclusion.  The law permits him to obtain the right after taking certain statutory steps.  Until he does so he can not acquire the right.  Before he acquires the right he can not be deprived of it.  The fact that once he had such right and abandoned the same is entirely immaterial.

For the same reasons the second question must also be answered in the negative.

(2)    The third question: whether the General Assembly has unconstitutionally delegated legislative power to the board of registration in dentistry, can only apply to Gen. Laws, cap. 155, § 4, and the amendment thereof by Pub. Laws, cap. 470, § 1, hereinbefore set forth, which provide that persons who thereafter desire to enter the practice of dentistry shall appear before said board and be examined with reference to their knowledge and skill in dentistry, and to such as pass a satisfactory examination certificates to that effect should be issued.  The defendant contends that it was the duty of the legislature to fix the standard of qualifications by which the board should measure the proficiency of candidates.  He says: "Instead of conferring an arbitrary power on the Dental Board, had the legislature regulated the practice of dentistry by fixing a standard of qualifications to examine those who did not possess the standard

qualifications and see if they came up to the standard fixed by the State then they would have been acting within their power.

. . . The statement is often made in cases of this kind that under the police power inherent in the State, the legislature may enact reasonable regulations for the examination and registration of physicians, surgeons, dentists, etc. We do not deny it, but in the case at bar, this has not been done. The legislature has enacted no regulations at all, but has turned the whole matter over to a Board appointed by the Governor. Nor has the Board enacted any regulations. If it has any rules or regulations they are not formulated but are locked up in the minds of the members. They may go by one unexpressed standard at one examination and by another unexpressed standard at another examination the next week. With every change in the membership of the Board a new standard inevitably and unconsciously appears, like Selden's illustration of equity as dependent upon the length of the Chancellor's foot. This is a substitution of a government by men in the place of a government by laws, and is, therefore, an unconstitutional and illegal delegation of legislative power, as well as an arbitrary, unreasonable, vexatious, and oppressive exercise of the police power. It is arbitrary and oppressive not only because it deprives the accused from practising dentistry although he has done so for twenty-six years and holds licenses in two states, but also because it debars all persons having confidence in him and his established reputation and who desire to continue to employ him as a dentist from doing so."

The defendant cites with approval the following, as examples of laws with standards of qualifications fixed by the legislatures as a guide to the boards of examiners: 1. Gen. Laws of N. J., 1189, Dentistry, whereof the portion of section 2, relating to examination of applicants, reads as follows: "The board shall adopt rules for its own government, and rules for the examination and licensing of practitioners of dentistry in this state; the examination of applicants for license to practice shall be confined to written or oral examination, or both written and oral, upon subjects properly relating to the science of dentistry, and a knowledge of which is necessary to the proper and skillful

practice of said science; the said board may also require from applicants, as part of the examination, demonstrations of their skill in operative and mechanical dentistry; and any rule altering the nature of the examination and increasing the severity thereof, or the subjects to be included therein, shall not be enforced at any examination held within six months after its adoption and public promulgation; said board shall have the power to determine the good standing and repute of any college or colleges, and may from time to time, designate in some public manner colleges whose diplomas will be received by it; the said board shall announce in the leading dental journals, from time to time, its regular stated times for holding examinations; it shall also cause to be published at least once in such journals, the rules and amendments thereto adopted for the examinations and licensing of practitioners, and the mode and terms of application for examining and license, which shall, in all cases, be reasonable and fair."

Rev. Stats. Ill. 1906, p. 1366, §§ 35 to 45.

"37. Who may practice—license—fee—eligibility—examination. §111. No person, unless previously registered or licensed to practice dentistry in this State at the time this act shall become operative, shall begin the practice of dentistry or dental surgery, or any branches thereof without first applying for and obtaining a license for such purpose from the Illinois State Board of Dental Examiners. Application shall be made to said board in writing, and shall, in every instance be accompanied by the examination fee of twenty dollars ($20), together with satisfactory proof that the applicant is of good moral character and twenty-one years of age or over at the time of making the application. Application from a candidate who desires to secure a license from said board to practice dentistry or dental surgery in this State shall be accompanied by satisfactory proof that the applicant so applying for a license has been engaged in the actual, legal and lawful practice of dentistry or dental surgery in some other state or country for five consecutive years just prior to application; or is a graduate of and has a diploma from the faculty of a reputable dental college, school or dental department of a reputable university; or is a graduate

of and has a diploma from the faculty of a reputable medical college or medical department of a reputable university, and possesses the necessary qualifications prescribed by the board. When such application and the accompanying proofs are found satisfactory, the board shall notify the applicant to appear before it for examination at a time and place to be fixed by the board. Examination may be made in whole or in part, orally or in writing at the discretion of the board, and shall be of a character as to test the qualification of the applicant to practice dentistry or dental surgery. All examinations provided for in this act shall be conducted by the board, which shall provide for a fair and wholly impartial method."

2 Rev. Stats of N. Y., 2846–47. Examination, Degrees, Licenses and Registration in Dentistry. "166. Examinations. The regents shall admit to examination any candidate who shall pay the fee herein prescribed and submit satisfactory evidence, verified by oath if required, that he:

"1. Is more than twenty-one years of age;

"2. Is of good moral character;

"3. Has a preliminary education equivalent to graduation from a four year high school course registered by the regents, or an education accepted by the regents as fully equivalent.

"4. Subsequently to receiving such preliminary education either has been graduated in course with a dental degree from a registered dental school, or else, having been graduated in course from a registered medical school with a degree of doctor of medicine, has pursued thereafter a course of special study of dentistry for at least two years in a registered dental school, and received therefrom its degree of doctor of dental surgery, or else holds a diploma or license conferring full right to practice dentistry in some foreign country and granted by some registered authority. Provided that any student of dentistry whose certificate of study under private preceptorship was duly filed with the secretary of the state dental society on or before July thirty-first, eighteen hundred and ninety-five, pursuant to the provisions of law then in force may also present himself for such examination, upon condition that he shall file with the regents before the first day of January,

nineteen hundred and two, a notice of his intention to present himself for such examination; provided, further, that no such certificate shall be filed after said first day of January, nineteen hundred and two. Any member of the board may inquire of any applicant for examination concerning his qualifications and may take testimony of any one in regard thereto, under oath, which he is hereby empowered to administer. Id. §166 (part of former § 162) as am'd L. 1895, c. 626; L. 1896. cp. 297, and L. 1901, c. 215."

2 Bates Ann. Ohio Stats. § 4404  "(Examination)".

The examination shall consist of practical demonstrations and written or oral tests, or both, at the option of the board, and shall include the following subjects, to wit: Anatomy, physiology, chemistry, materia medica, therapeutics, metallurgy, histology, pathology, bacteriology, prosthetic, operative, and surgical dentistry.

"(Who shall be registered and licensed.)   All persons successfully passing such examinations, or as above provided, and of good moral character, shall be registered and licensed by the said board of dental examiners, and shall receive a certificate of such registration and license duly authenticated by the seal and signature of the president and secretary of said board."

1 Purdon's Digest Laws of Penn. 1211, Dentists.

"12.   Subjects for examination: All candidates for license to practice dentistry in the state of Pennsylvania, (with the exception of those otherwise provided for in section twelve of this act) (paragraph 17) shall be required to pass an examination by the state board of dental examiners upon the following subjects:

" 1. General anatomy and physiology.
" 2. Special dental anatomy.
" 3. Dental histology.
" 4. Dental physiology.
" 5. Chemistry and metallurgy.
" 6. Materia medica.
" 7. Dental pathology, bacteriology, and therapeutics.
" 8. Anesthesia.
" 9. Oral surgery.

"10. Principles and practice of operative and prosthetic dentistry.

"13. Each applicant shall also furnish to the board of dental examiners satisfactory evidence of his or her proficiency in the manipulative procedures of dentistry, either by producing an example of his or her work, duly attested by the demonstrator in charge of the clinic of the college issuing his or her diploma, or by a practical demonstration of his or her skill in the presence of the examining members of the said board.

"14. Said examinations shall be conducted in writing and shall embrace all of the subjects named in section nine of this act. After each examination the board having charge thereof shall, without unnecessary delay, act upon the same. An official report of such action, signed by the president and secretary and each acting member of the said board of dental examiners, stating the examination average of each candidate in each branch, the general average, and the results of the examination, whether successful or unsuccessful, shall be transmitted to the dental council. The said report shall embrace all the examination papers, questions and answers thereto. All such examination papers shall be filed in the office of the secretary of internal affairs and kept for reference and inspection for a period of not less than five years." . . .

"17. On and after the first day of October, one thousand eight hundred and ninety-seven, any person not heretofore (Ibid. § 12) authorized to practice dentistry in this state, and desiring to enter upon such practice, may deliver to the secretary of the dental council, upon the payment of a fee of fifteen ($15.00) dollars, a written application for license, together with satisfactory proof that the applicant is not less than twenty-one years of age, is of good moral character, has obtained a competent common school education, and has received a diploma conferring the degree of doctor of dental surgery, or other recognized dental degree, from a reputable institution of the United States, recognized as of good repute by the board of dental examiners of this state, and legally competent to confer the same, or a diploma or a license, conferring the full right to practice the branches of dentistry in some foreign country.

Applicants who have received their degree in dentistry after the first day of October, one thousand eight hundred and ninety-seven, must have pursued the study of dentistry for at least three years, including three regular courses of lectures extending over a period of at least six months in separate years, in some legally incorporated dental college or colleges, prior to the granting of said diploma or foreign license. Such proof shall be made, if required, upon affidavit. Upon making such payment and proof the dental council, if satisfied with the same, shall issue to such applicant an order for examination before the state board of dental examiners. In case of failure at any such examination, the candidate, after the expiration of six months and within two years, shall have the privilege of a second examination by the said board, without the payment of an additional fee; but for any other subsequent examinations he shall pay the usual fees prescribed in this act."

We are unable to detect any superiority in the laws of the different States hereinbefore set forth, in this respect, over the statute in question. The board, in determining whether candidates have the requisite knowledge and skill in dentistry, necessarily must pass upon their familiarity with the constituents of such knowledge. The mere naming of these subjects by the legislature is of no practical value, so far as we can observe. The laws which are cited with approval, as aforesaid, leave the boards to determine what candidates are versed in the branches of learning set forth. No attempt is made in the statutes to specify what number of questions must be propounded to any candidate for examination upon each or any of the above-mentioned subjects, nor is it stated whether the same number of questions must be answered by every candidate; nor are there any provisions declaring what percentage of the questions submitted must be answered correctly by any candidate in order to pass the examination, nor is it provided that the identical questions shall be put to each applicant, nor is there any provision that the percentage required shall always remain the same; that the standard of proficiency and efficiency shall never be advanced. In other words, much must be left to the sound discretion of the board of examiners. The fact that the board

has or has not made rules for its guidance does not appear in the present case, and if it did it could have no bearing upon the constitutional questions that have arisen. The acts of the General Assembly, and not those of the board of registration in dentistry, are called in question in these proceedings. The power of the legislature to regulate the practice of dentistry has been carefully considered in an opinion written by Gilfillan, C. J., in the case of *State* v. *Vandersluis*, 42 Minn, 129, *et seq.*, as follows: "That the legislature may prescribe such reasonable conditions upon the right to practise medicine or law as will exclude from the practice those who are unfitted for it, is so well settled by decisions of the courts as to be no longer an open question. The power rests on the right to protect the public against the injurious consequences likely to result from allowing persons to practise those professions who do not possess the special qualifications essential to enable the practitioner to practise the profession with safety to those who employ him. The same reasons apply with equal force to the profession of dentistry, which is but a branch of the medical profession. That, in the exercise of that power, the legislature may require, as a condition of the right to practice, that the person shall procure a license; may designate some officer or board to issue the license, and to determine whether an applicant possesses the qualifications required to entitle him to it; and may prescribe, so far as can be done by a general law, what qualifications shall be required, and how the possession of them by the applicant shall be ascertained,—necessarily follows from the power itself. It is for the legislature, and not for the courts, to determine those things. The only limit to the legislative power in prescribing conditions to the right to practice in a profession is that they shall be reasonable. Whether they are reasonable,—that is, whether the legislature has gone beyond the proper limits of its power,—the courts must judge. By the term 'reasonable' we do not mean expedient, nor do we mean that the conditions must be such as the court would impose if it were called on to prescribe what should be the conditions. They are to be deemed reasonable where, although perhaps not the wisest and best that might be adopted, they are fit and appropriate to the end

in view, to wit, the protection of the public, and are manifestly adopted in good faith for that purpose. If a condition should be clearly arbitrary and capricious; if no reason with reference to the end in view could be assigned for it; and, especially, if it appeared that it must have been adopted for some other purpose, such for instance, as to favor or benefit some persons or class of persons,—it certainly would not be, reasonable, and would be beyond the power of the legislature to impose." See *Kettles* v. *The People*, 221 Ill. 221, 1906; and also *In re Thompson*, 36 Wash. 377, 1904. The duties assigned to the board of registration in dentistry are confined to the examination of applicants for certificates, and solely with reference to their knowledge and skill in dentistry. The members of the board are appointed, by the governor, from the graduates in dentistry residing and doing business within the State. This method of selection is recognized as one most likely to result in the appointment of impartial and qualified experts in the profession, and it was peculiarly appropriate for the legislature to entrust the examination of candidates to such a board so constituted. There is nothing legislative in their functions. As we fail to discover any delegation of legislative power by the General Assembly to the board of registration in dentistry in the statutes hereinbefore referred to, the third question must also be answered in the negative.

(3)    The fourth question: whether the statutes complained of are in conflict with article 4, section 2, of the constitution of the United States; and question five, whether the statutes referred to conflict with article 14, section 1, of the amendments to the constitution of the United States, may be considered together.

In the case of *Chambers* v. *Church*, 14 R. I., 398, 1884, this court, having under consideration article IV, section 2, of the constitution of the United States, used the following language: "This section has frequently been brought before courts for construction, and its meaning and application are now quite definitely determined.

"It was intended to give a unity to the people of this nation which would not otherwise follow from a league of separate and independent states. It means that citizens of one state

shall not be treated as aliens in other states, but shall have,
throughout the land, all the privileges and immunities which
are incident to citizenship.  It does not obliterate all distinc-
tions which may arise from the fact of residence, nor deprive a
state of the right to make laws which discriminate in favor of
residents to the exclusion of non-residents, so long as the
fundamental rights of citizens of other states are not disturbed.
For example, a non-resident cannot vote, hold office, practice
law, or enjoy school, and many other privileges, simply because
he is a citizen and has those rights in another state."

In the case of *The State* v. *Creditor*, 24 Pac. Rep. (1890) 346,
which was a case involving the constitutionality of a statute
of the State of Kansas, regulating the practice of dentistry,
Johnston, J., speaking for the court, says, *inter alia:*

"The applicant contends that the act is repugnant to § 2,
of article 4, of the federal constitution, which declares that
'the citizens of each state shall be entitled to all the privileges
and immunities of citizens in the several states,' and is also in
conflict with § 1 of the 14th amendment of the constitution of
the United States, which provides that 'No state shall make or
enforce any law which shall abridge the privileges or immuni-
ties of citizens of the United States.'  The power of the legis-
lature to regulate the practice of medicine, dentistry, or surgery,
is undoubted; it is an exercise of the police power of the state
for the protection of the health and the promotion of the com-
fort and welfare of the people.  It may provide that only those
possessing skill and learned in these professions shall be per-
mitted to practice; may prescribe the nature and extent of the
qualifications required, and the rules for ascertaining and deter-
mining whether those proposing to practice come up to the
statutory standard.  If the regulations and conditions are
adopted in good faith, and they operate equally upon all who
may desire to practice, and who possess the required qualifi-
cations, and if they are adapted to the legislative purpose of
promoting the health and welfare of the people by excluding
from the practice those who are ignorant and incapable, then
the fact that the conditions may be rigorous, impolitic and un-
just will not render the legislation invalid.  The authorities

uniformly support the exercise of this power by the state, and statutes similar to the one under consideration have been repeatedly sustained. (*Dent* v. *West Virginia*, 129 U. S. 114; *The State* v. *Vandersluis*, (Minn.) 43 N. W. Rep, 789; *Hewitt* v. *Charier*, 16 Pick. 353; *Eastman* v. *The State*, 109 Ind. 278; *The People* v. *Phippin*, (Mich.) 37 N. W. Rep. 888; *Richardson* v. *The State*, 47 Ark. 562; *Ex parte Spinney*, 10 Nev. 323; *Harding* v. *The People*, 15 Pac. Rep. 727; *Antle* v. *The State*, 6 Tex. App. 202; *Musser* v. *Chase*, 29 Ohio St. 577; *Thompson* v. *Hazen*, 25 Me. 104; *The State* v. *Gregory*, 83 Mo. 123; *The State* v. *Med. Ex. Board*, 32 Minn. 324.) Although not specifically declared in the act, the manifest purpose of the legislature was to exclude from a profession requiring learning, skill, and experience those, who are unfit to practice, and thus protect the public from ignorance and incompetency. No arbitrary or capricious conditions are imposed. The profession and practice are open to every citizen of the United States who is qualified, and who can produce evidence of the same. The legislature saw fit to permit those practicing in the state when the act was passed to continue to practice without diploma or other evidence of competency. It may be, as contended, that the fact of being in the practice is not the best test or evidence of skill and capability; but the courts have nothing to do with the expediency or wisdom of the standard of qualification fixed; nor with the tests adopted for ascertaining the same. The legislature proceeded upon the theory that the fact that they had been engaged in the practice within the state was sufficient evidence of their proficiency in the profession. This fact is made by the legislature an evidence of skill and competency equivalent to a diploma from a dental college; and the wisdom of either test is a question for the legislature and not for the courts. The act cannot be held to unduly discriminate between persons or classes, and unconstitutional because it exempts those engaged in the practice within the state when the law was enacted from the necessity of obtaining a diploma. (*Fox* v. *Territory*, 5 Pac. Rep. 603; *Ex parte Spinney, supra; The People* v. *Phippin, supra; The State* v. *Vandersluis, supra.*) All who enter the profession after the passage of the law are subject to the same conditions. No

distinctions are made between citizens of this and other states. There is no discrimination between graduates from dental colleges in Kansas and those graduated from colleges located in other states or in foreign countries. No higher qualification is required nor any different test of competency prescribed, nor any higher charge for a certificate imposed on the appellant, who came into the state after the law was enacted, than was required of or imposed on one who resided in Kansas at that time but was not engaged in the practice of dentistry. It may be unfortunate for the appellant that he had not begun the practice in the state when the law was enacted, and thus have had that evidence of qualification essential to the obtaining of a certificate without a diploma; but when no more is required of him than is required of all other citizens of the United States proposing to begin the practice within this state, he has no cause to complain."

The foregoing remarks are equally applicable to the Rhode Island statute. There is nothing in sections 4 and 6 of chapter 155 which denies to citizens of other States coming into this State the privileges and immunities of citizens of this State, nor denies to any person who is a citizen of the United States the privileges and immunities conferred by the federal constitution. Any person, whoever he may be, or wherever he may have resided, who comes into this State, has the same privilege as do citizens of this State: namely, to practice dentistry in this State if he first complies with the provisions of the law regulating that profession. And these provisions impose no special burden on any person or class of persons. For these reasons, a negative answer must be given to questions four and five.

(4) The pertinency of question six is not apparent. A careful examination of the statutes of Rhode Island, to which our attention is invited in these proceedings, together with the section of the article of the constitution of the United States to which they are said to be obnoxious, throws no light upon the subject. As the only public acts of other States referred to in the present case are the certificates of registration set out in the defendant's special plea in bar, it follows that the defendant deems that their validity may in some way be impaired by the

statutes of this State hereinbefore referred to. The record does not disclose the fact that any one has denied their existence or brought in question or doubt any of the facts therein set forth. In the case of *Rathbone* v. *Terry*, 1 R. I. 73, 1837, this court has considered the meaning of .the section in the following words: "The first section of the fourth article of the constitution of the United States declares, that 'Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And congress may, by general laws, prescribe the manner in which such acts, records, and proceedings, shall be proved, and the effect thereof.' By virtue of the power granted them congress, by an act of May 26, 1790, after prescribing the mode of authentication of public acts, records, and judicial proceedings, in each state, declare, that 'said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them, in every court within the United States, as they have, by law or usage, in the courts of the state from whence the said records are, or shall be taken.'

"The terms, 'full faith and credit,' in this article of the constitution, obviously import absolute verity; and the fair and reasonable construction of the words of this article would seem to be, that the public acts, records, and judicial proceedings of every state, when proved in the manner that congress should by general laws prescribe, should be received and considered in each of the other states as evidence of the highest nature and conclusive proof of the facts therein set forth; and if any doubt could arise on the words of the constitution, that doubt would seem to be removed by the provision in said act of congress, that, 'said records and judicial proceedings shall have such faith and credit given to them, in every court within the United States, as they have by law or usage, in the courts of the state from whence the said records are taken.' And it is difficult to conceive what object the framers of the constitution had in view by inserting these words in that instrument, if they did not intend them so to be construed."

Even assuming that the certificates referred to come within the class of public acts, records and judicial proceedings comprehended by this section of the constitution, there is nothing in

the fourth or sixth sections of chapter 155 which violates this provision of the federal constitution as interpreted by this court. There is nothing in either of these sections of the statute which directly or indirectly prevents the certificates of boards of registration in dentistry of other States from being accepted in this state as evidence of the fact that the person holding those certificates is a duly registered dentist in the state from which the certificate issued. That is all the faith and credit which, under the opinions in this State, is required to be given such records by this provision of the federal constitution. No State has such extra-territorial jurisdiction that it can, by its certificate, confer upon the person named therein the *right* to practice his profession in another State. The sixth question must be answered in the negative.

(5) The seventh and last question also requires a negative answer.

In addition to the reasons given in the answer to the first question, the following considerations are worthy of note: "The laws regulating dentistry are of later enactment than those regulating the practice of medicine, but the principles underlying their legality are the same.

"A statute of West Virginia, similar in import to the New Jersey act of 1898, except that it regulated the practice of medicine, was sustained, as a valid exercise of the police power of the state, by the Supreme Court of the United States. *Dent* v. *West Virginia*, 129 U. S. 114; *State* v. *Creditor*, 24 Pac. Rep. 346; *Hockett* v. *State*, 105 Ind. 250.

"Nor is such legislation *ex post facto*, *Hawker* v. *New York*, 170 U. S. 189. See, generally, text and notes in 22 Am. & Eng. Encycl. L. (2d ed.) 781, 782, and the cases cited.

"The constitution of New Jersey in nowise prohibits such legislation in any respect in which it would not be equally interdicted by the constitution of the United States, unless it can be said that such legislation interferes with the natural and unalienable right of 'acquiring, possessing and protecting property' guaranteed by article 1, paragraph 1, of our state constitution.

"A calling, business or profession, chosen and followed, is

property.   *Barr* v. *Essex Trades Council,* 8 Dick. Ch. Rep, 101, 112; *Slaughter-House Cases,* 16 Wall, 36, 116."   .   .   .

"But does the act of 1898 take the defendant's property or calling from him?

"We do not so construe it or its effect.

"It is simply a regulation of the use of one's property rights or business, controlling the conditions under which it may be enjoyed or pursued.   It is within the power of the state to place reasonable regulations upon the business or calling of any person."—per Fort, J., in *State* v. *Chapman,* 69 N. J. Law, 465. 1903.   For the reasons given in the above opinion, the case was affirmed in 70 N. J. L. 339.

And also, "The right to pursue a lawful occupation is, of course, conceded, but there are certain occupations, in themselves lawful, which are subject to legislative restriction and regulation for the preservation of comfort, health, and life. It is now generally, if not universally, held that the practice of dentistry is one of the occupations reasonably falling within the legislative right of regulation.   This court recently so held in *State ex rel. Smith* v. *Board of Dental Examiners,* 31 Wash. 492, 72 Pac. 110, which was a case involving the constitutionality of the act in question in this case."—per Mount, J., *In re Thompson,* 36 Wash. 377, 1904.   And see also *State* v. *Doerring,* 92 S. W. Rep. (Mo.) 489, 1906; *State ex rel Glenn* v. *Board of Dental Examiners,* 26 Ohio Cir. 369, 1904.

The questions having been severally answered as aforesaid, the papers in the cause, with our decision certified thereon, are remitted to the Superior Court for further proceedings.

*Henry W. Greenough, Assistant Attorney-General,* for State.
*Percy W. Gardner,* for Board of Registration in Dentistry.
*George S. Engle,* for defendant.
*Amasa M. Eaton,* of counsel.